Joseph MORRIS, etc., et al.,
Plaintiffs, Appellees,

v.

Anthony TRAVISONO, et al.,
Defendants, Appellees.

John J. Moran, Defendant, Appellant.

No. 82–1870.

United States Court of Appeals,
First Circuit.

Argued March 11, 1983.

Decided May 24, 1983.

George M. Cappello, Cranston, R.I., for appellant.

Robert B. Mann, Providence, R.I., for appellees.

Before COFFIN, Chief Judge, BREYER, Circuit Judge, and MALETZ,* Senior Judge.

* Of the United States Court of International Trade, sitting by designation.

1. Civ. No. 4192 (D.R.I. April 20, 1972).

2. Plaintiff's suit is a consolidated action combining a suit for injunctive and declaratory redress of constitutional deprivations under 42

COFFIN, Circuit Judge.

This appeal concerns plaintiff-appellee John Carillo's continued confinement in segregated status ("C" status) in the high security section of the Rhode Island Adult Correctional Institute (ACI). Plaintiff claims that his confinement violates the Eighth and Fourteenth Amendments to the U.S. Constitution, the 1972 consent decree of *Morris v. Travisono*[1] (the "*Morris* Rules") governing the classification and privileges of inmates at the ACI, and an August 1980 court order directing reconsideration of his classification in accordance with those rules.[2] The district court, 549 F.Supp. 291, found plaintiff's continuation in "C" status unconstitutional, and ordered appellants "to develop a written plan under which [appellee] will be gradually reintroduced into the general population of the high security facility of the ACI" over a period of not more than three months. Inasmuch as we are persuaded that reclassification is mandated by the *Morris* Rules, we affirm. As to the constitutionality of plaintiff's confinement, we express no opinion.

## I. Factual Background

Plaintiff, now some 42 years old, has been imprisoned in the ACI for most of the last 21 years for various offenses, and is under life sentence for the murder of a corrections officer in 1973. Since that murder, plaintiff has been in some form of segregated or isolated confinement in the medium security Cell Block South, the maximum security Behavioral Control Unit, the back area of the infirmary in maximum security, and the high security facility at the ACI. For all but 14 months of this time, plaintiff has been confined to his cell 23 to 24 hours a day. From June 1973 to January 1974, plaintiff was classified in administrative segregation; from January 25 to April

U.S.C. § 1983, and a motion for enforcement of the *Morris* decree; hence the instant case's caption. A copy of the *Morris* Rules is reprinted as an appendix to the district court's August 1980 decision in this case, 499 F.Supp. 149, 161–74.

1974, he was classified in "B" status; and since April 1974 he has been classified in "C" status.

Under the *Morris* Rules, inmates at the ACI are classified in four categories—"A", "B", "C", and "D"—which determine their privileges and restrictions. "A" status, or general population, is the "normal category of inmate during term". "B" status is for inmates "who, because of their pattern of conduct, require on a temporary basis close restrictive movement and closer supervision than Category 'A' population." "C" status is reserved for inmates "whose conduct indicates chronic inability to adjust to general prison population or who require maximum protection for themselves or others who constitute a serious threat to the security of the institution." [3]

In August 1980, the district court held that plaintiff was improperly classified in "C" status and ordered the prison classification board to reconsider his status.[4] In accordance with that order, the classification board convened on September 22, 1980, but after reviewing plaintiff's files, along with evaluations by his counselor, several psychologists and the prison psychiatrist, the board refused to reclassify him, concluding that he was still a "dangerous person" with a "high propensity for continued violence and assaults on others", who therefore presented a "high degree of risk". Subsequent reviews have maintained plaintiff's "C" classification.

On December 10, 1980, plaintiff filed a motion to adjudge defendants in contempt of the court's August order. In March 1981, after a two-day hearing, the motion was denied. A motion to reopen was subsequently granted, and on October 12, 1982, the district court issued the order under review here. In that order, the court deferred ruling on plaintiff's motion to adjudge defendants in contempt, but found plaintiff's continued segregated confinement in "C" status unconstitutional under the Eighth and Fourteenth Amendments.

## II. Propriety of Plaintiff's Classification

■ Under the *Morris* Rules, an inmate may be placed in "C" status in two circumstances, neither of which warrants plaintiff's classification here. First, "C" status may be imposed as punishment after conviction of a disciplinary offense. Defendants do not attempt to justify plaintiff's classification on this ground, and in any event, "C" status may be imposed as punishment only for stated periods, and not, as here, indefinitely. Second, an inmate may be assigned "C" status through formal reclassification by the prison classification board, subject only to periodic review. As a classification, "C" status is reserved, as noted above, for inmates "whose conduct indicates chronic inability to adjust to general prison population or who require maximum protection for themselves [5] or others who constitute a serious threat to the security of the institution." Plaintiff meets neither description.

Defendants contend that plaintiff cannot safely be returned to the high security facility's general population ("A" status) for two reasons—first, that his disciplinary record and criminal history establish that he is still dangerous; and second, that he is beyond rehabilitation and is not psychologically fit to be returned to general population. With respect to the latter contention, the district court simply disbelieved defendants and credited contrary testimony from ex-

---

**3.** "D" status, which is not relevant here, is for inmates "who because of their course of conduct while classified within Category 'C' require closer control than provided with 'C' category."

**4.** The court also found that plaintiff had been denied privileges to which he was entitled in "C" status, and that defendants had not devised a meaningful treatment plan for him, all

in violation of the *Morris* Rules, and ordered relief accordingly. That relief is not in issue here.

**5.** Protection, that is, "from self-inflicted injuries, not from attacks by others", such as prison guards seeking revenge for the murder of a corrections officer. *Morris v. Travisono,* 499 F.Supp. 149, 159 (D.R.I.1980). *See* note 8 *infra.*

perts presented by the plaintiff.[6] With respect to plaintiff's dangerousness, the court found that his criminal record was no worse than those of many inmates in maximum security, and that his disciplinary record, free of violent infractions for three years and consisting largely of refusals to stand for the count and sleeping at the wrong end of his bed, did not warrant continued segregated confinement.

In addition, the court found that defendants' cited reasons for keeping plaintiff in segregation were "mere pretexts", and that plaintiff "has been kept in isolation [sic][7] not for his dangerous propensities, but because he was convicted of the murder of a prison guard." In support of this finding, the court noted that defendants have failed "to even attempt to return [plaintiff] to the prison's general population in the past eight-and-a-half years"; "have not meaningfully reviewed [his] progress"; have not attempted "to evaluate whether he could adjust to the general population"; and have failed to take steps to ameliorate the debilitating effects of his prolonged segregation.[8] Although the record bears evidence which could also sustain contrary findings (Corrections Director Moran, for example, testified of allegations by an unidentified "confidential" source that plaintiff was "contemplating" killing another corrections officer), the credibility and weight of that evidence were for the district court, and we cannot say

that its factual findings are clearly erroneous. *See* Fed.R.Civ.P. 52(a); *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Evans v. United States,* 319 F.2d 751, 753 (1st Cir.1963) (findings clearly erroneous only when appellate court is left with the firm and definite conviction that a mistake has been made).

We are acutely aware of the Supreme Court's admonition that security considerations are "peculiarly within the province and professional expertise of corrections officials", and that courts "should ordinarily defer to this expert judgment in such matters" unless there is "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations". *Bell v. Wolfish,* 441 U.S. 520, 539, 540–41 n. 23, 99 S.Ct. 1861, 1874, 1874–1875 n. 23, 60 L.Ed.2d 447 (1979). Assuming that this principle of deference in *constitutional* cases governs cases involving application of agreed-to rules such as the *Morris* Rules, we conclude that the court's findings are amply supported. We note the restraint exercised by the court, the considerable lapse of time, the detailed inquiry made and the conflicting views of reputable experts, and the conditions inherent in the court's order. We are led to ask whether, if a judge cannot be sustained under these circumstances against the contrary views of

---

**6.** In addition, the court concluded that, whatever the facts regarding plaintiff's capacity to be rehabilitated, lack of this capacity was not alone a sufficient basis under the Eighth Amendment for holding him indefinitely in segregated confinement, since he could safely be removed from segregation, whether or not he could be rehabilitated. Since we do not reach the Eighth Amendment issue, we express no opinion on this conclusion.

**7.** Strictly speaking, plaintiff is not in "isolation" but in segregation, for he evidently is not deprived of human contact and external stimulus to the degree typical of isolation.

**8.** The court also observed that defendants "have advanced a series" of changing and "unsatisfactory justifications for [plaintiff's] continued solitary [sic] confinement":

"At the original trial, they maintained that [plaintiff] must be kept in isolation [sic] to protect him from correctional officers at the

ACI who might seek revenge for his 1973 murder of a prison guard.... As a result of this Court's previous decision ordering the defendants to reconsider [plaintiff's] status without considering the hostility of the prison guards toward him and without placing undue emphasis on his 1973 murder conviction, the defendants no longer purport to rely on these considerations. Now the defendants appear to be contending that the fact that [plaintiff] was convicted of murdering a prison guard, coupled with [a prison psychiatrist's] conclusion that he is neither treatable nor rehabilitable, prove that [plaintiff] is too dangerous to be released into general population. These generalizations conflict with the testimony of both plaintiff's preeminent experts and belie [Rhode Island Corrections Director John] Moran's own assessment."

corrections officials, we have not reached a point where the decision of officials to keep an inmate permanently segregated is unreviewable. Concluding that we have not reached this point, we see no basis for disturbing the court's findings.

Whether or not those findings are alone enough to make out an Eighth Amendment violation,[9] they are equally relevant to the propriety of plaintiff's classification under the *Morris* Rules,[10] and compel relief on that basis. *See, e.g., J.E. Riley Investment Co. v. Commissioner of Internal Revenue,* 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940) (where decision below is correct, it must be affirmed by appellate court even though lower court may have given a wrong reason for its action). There remains only the propriety of the precise relief granted, that is, reintegration of plaintiff into the general population of the high security facility.

█ Because the classification decision involves the exercise of judgment peculiarly within the expertise of correctional officials, we ordinarily would incline to ordering a new classification hearing rather than a specific new classification. We are persuaded for a number of reasons, however, that the district court was within its discretion in ordering plaintiff conditionally reintegrated into the general population of the high security facility.

First, past experience suggests that a new classification hearing would invite further temporizing and denial. The district court has already given prison authorities a chance to make the decision. The district court was therefore not required to pursue that route again.

Second, under the *Morris* Rules, general population ("A" status) is an inmate's presumptive classification—the "normal category of inmate during term". Since defendants have failed to adduce a valid reason for another classification, it follows that plaintiff, on this record, is entitled to be returned provisionally to "A" status.

Third, the district court's order provides for gradual reintegration and trial periods in general population, psychological assistance to plaintiff in making the transition, and a mechanism whereby both plaintiff and corrections officers can voice any problems arising during the transition period. Moreover, the order leaves the details of the plan to defendants to formulate.

This three-month transition period allowed by the court is of critical importance. The necessary predicate for assuring sensitive and responsive judicial oversight is the exercise of good faith and some restraint by correctional officers. The district court has decided that some minimal acts of passive protest were an insufficient basis for continuing segregated confinement. It may well be that plaintiff has lost the ability to adjust to a less restrictive environment and that he will resort to additional acts of challenge or resistance to authority. Defendants cannot be stripped of their power to deal with any such significant recalcitrance. Given an earnest, sensitive, and persistent effort on their part to accomplish

9. Our review suggests a number of open questions raised by the court's findings. First, the district court used the terms "segregation", "isolation", and "solitary" interchangeably. These terms, however, describe quite different types of confinement with different Eighth Amendment consequences. More importantly, the court nowhere describes the precise conditions of plaintiff's "isolation"—e.g., it nowhere states whether or not plaintiff can communicate with other inmates in his unit while in his cell. In addition, the court's own statement of facts reveals that plaintiff has not been in his present location—or, for that matter, in "C" status—for the whole time since 1973. As our recent decision in *Jackson v. Meachum,* 699 F.2d 578, 580–84 (1st Cir.1983), indicates, such details of duration and condition may be determinative of an Eighth Amendment claim, for 23 hours' daily confinement in a cell permitting communication among inmates may well be constitutional, even over extended periods, while 23 hours per day in a closed cell for a shorter period might not be permissible.

10. Defendants admitted as much at argument when they conceded that plaintiff's confinement could not contravene the Eighth Amendment without also violating the *Morris* Rules.

a successful transition, the authorities will have a strong claim on the understanding and remedial power of the district court should they find it necessary to bring problems to its attention. Moreover, should plaintiff's future conduct warrant, he can always be reclassified in accordance with the Rules.

Finally, even in general population, plaintiff will remain in the high security facility, a new building designed to provide secure housing of the most dangerous prisoners in the Rhode Island prison system. The facility is small (total capacity—90), with six separate housing areas independently controlled and separated by locked doors, with no cross movement permitted. The circumstances are therefore critically different from those in *Jackson v. Meachum, supra,* where our reversal of relief was colored by the fact that release from segregated confinement meant release into a facility with inadequate security. *See* 699 F.2d at 579, 580, 581.

We note last that our finding of a *Morris* Rules violation stems purely from our obligation to avoid constitutional decisions when other grounds are available, and does not entail or suggest any conclusion on plaintiff's motion below to hold defendants in civil contempt of the Rules and of the district court's August 1980 order. Since the district court did not reach that motion, and plaintiff has not cross-appealed, that matter is not before us.

*The judgment of the district court is therefore affirmed.*