**Dan THOMAS, Appellant,**

v.

**James A. COLLINS, Appellee.**

**No. 01–96–01289–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 21, 1997.

Dissenting Opinion Oct. 30, 1997.

Order Overruling Rehearing En Banc Oct. 30, 1997.

Dan Thomas, Tennessee Colony, pro se.

M. Lawrence Wells, Austin, for Appellee.

## OPINION

COHEN, Justice. ·

This is a pro se in forma pauperis appeal from a summary judgment on an inmate's claims against a prison official. We affirm.

## FACTS

This is the fourth appeal in this case. Appellant, Dan Thomas, sued appellee, James Collins, the director of the Texas Department of Criminal Justice—Institutional Division (TDCJID), claiming violations of state law and of his rights under 42 U.S.C. § 1983 (1987). Thomas alleged he was held in administrative segregation for six years because he filed grievances and lawsuits against Collins and his staff. Thomas alleged Collins and his staff (1) denied him rights under the U.S. Constitution's First and Fourteenth amendments, (2) violated civil conspiracy laws, (3) violated his Eighth amendment rights under the U.S. Constitution, and (4) engaged in the intentional infliction of emotional distress. Thomas sought declaratory judgment, injunctive relief, and monetary damages.

The trial judge dismissed the suit as frivolous on his own initiative. The El Paso Court of Appeals reversed and remanded. *Thomas v. Collins*, No. 08–91–00246–CV (Tex.App.—El Paso, Feb. 26, 1992, no writ) (unpublished). It held the allegations of lengthy segregation sufficed to prevent dismissal without a factual hearing. *Id.*

On remand, Collins answered and moved to dismiss with prejudice. The trial judge again dismissed the case. On appeal, this Court reversed and remanded. *Thomas v.*

*Collins,* 860 S.W.2d 500 (Tex.App.—Houston [1st Dist.] 1993, writ denied). We held Thomas adequately pled a section 1983 claim and Collins did not establish his immunity from suit as a matter of law. *Id.* at 503.

On remand, Collins moved for summary judgment, which the trial judge granted. On appeal, this Court reversed and remanded because the trial judge granted summary judgment before submission date. *Thomas v. Collins,* No. 01–95–01230–CV, 1996 WL 325687 (Tex.App.—Houston [1st Dist.], June 13, 1996, no writ) (unpublished). On remand, Thomas responded to the summary judgment and moved for summary judgment himself. Thomas moved for summary judgment on the ground Collins had violated his Eighth amendment rights by the 11–year segregation. After a hearing, the trial judge denied Thomas' summary judgment motion and granted Collins' without specifying grounds.

In points of error one and two, Thomas complains the trial judge erred in granting summary judgment because material fact issues existed and Collins did not prove entitlement to summary judgment as a matter of law. In point of error three, Thomas complains the trial judge erred in overruling his motion for summary judgment.

### SUMMARY JUDGMENT STANDARD OF REVIEW AND BURDEN OF PROOF

We follow the standard of review and burden of proof in *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996).

### THOMAS' SECTION 1983 CLAIMS

At the time of this appeal, Thomas had been held in administrative segregation for almost 11 years. Thomas' section 1983 allegations are: (1) Collins and others violated his First and Fourteenth amendment rights by retaining him in segregation as retaliation for filing grievances and lawsuits and (2) Collins and others violated his Eighth amendment rights by maintaining him in segregation for a length of time disproportionate to any claimed security threat.

#### A. Cause of Action

■ Section 1983 provides a remedy when any person acting under color of state law deprives another of rights, privileges, or immunities protected by the U.S. Constitution or laws. 42 U.S.C. § 1983 (1987); *Thomas,* 860 S.W.2d at 502. A court must first determine whether the plaintiff has been deprived of such a right, privilege, or immunity. *Emerson v. Borland,* 927 S.W.2d 709, 717 (Tex. App.—Austin 1996, writ denied). If this inquiry is answered in the affirmative, the court determines whether the defendant is responsible for that violation. *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992); *Emerson,* 927 S.W.2d at 717. Only after this second inquiry has been answered in the affirmative should the court consider whether the defendants are entitled to qualified immunity. *See Siegert v. Gilley,* 500 U.S. 226, 227, 231–32, 111 S.Ct. 1789, 1791, 1793, 114 L.Ed.2d 277 (1991); *Emerson,* 927 S.W.2d at 717.

#### B. Personal Involvement or Vicarious Liability

Assuming without deciding for now Thomas was deprived of constitutional rights, we examine Collins' personal involvement. Collins' summary judgment motion asserted (1) he was not personally involved in any alleged violations, (2) he could not be held vicariously liable for his subordinates' alleged violations, and (3) no violations occurred.

■ Only those personally involved in the violation or whose acts are causally connected to it may be liable in a section 1983 action. *Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir.1995). That is, a government official may not be held liable under section 1983 for his subordinates' violations on a theory of vicarious liability. *Williams v. Luna,* 909 F.2d 121, 123 (5th Cir.1990); *Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir.1985). Thomas alleges that Collins (1) was directly involved in the decision to keep him segregated and (2) had constructive knowledge of his situation but consented to or did not act on it.

Thomas provided summary judgment evidence of only three occasions of Collins' personal involvement of any type in the alleged violations against him. Thomas did not al-

lege that Collins negligently supervised his subordinates, that he created a policy leading to the alleged violations, or that he acted with deliberate or reckless disregard for Thomas' rights.

### 1. Thomas' Letters to Collins

■ First, Thomas' summary judgment affidavits stated he sent Collins many forms and letters requesting his release from segregated status while Collins was TDCJID's director. Collins' summary judgment evidence asserted he did not know of Thomas' segregation or the reasons for it. Collins also asserted he did not read any letters from Thomas. Collins stated he has to employ a staff to handle the large number of complaints which come outside the official grievance system. The staff forwards the complaints to the official who has authority to respond to them. Collins stated he rarely, if ever, handles these letters because of the large volume.

Thomas did not produce copies of the forms he sent Collins. The summary judgment evidence does not show whether Thomas' letters advised Collins of the alleged violations or simply of his desire to be released or transferred. The key is whether Collins knew of the former rather than of the latter.

■ Even assuming Thomas' letters advised Collins of the alleged violations, the mere sending of these letters to an official in Collins' position does not necessarily personally involve the official for purposes of a section 1983 claim. *See Crowder v. Lash,* 687 F.2d 996, 1005–06 (7th Cir.1982) (refusing to find state commissioner of corrections "personally responsible" for alleged Eighth amendment violation simply because prisoner

advised commissioner by letter of it); *cf. Hanna v. Lane,* 610 F.Supp. 32, 36 (N.D.Ill. 1985).[1] We find Collins carried his summary judgment burden of showing no personal knowledge despite the letters, while Thomas did not raise a fact issue on it.

### 2. Refusal to Desegregate in 1994 and 1995

■ Thomas' summary judgment affidavit also asserted Collins voted in 1994 and 1995 to keep him in administrative segregation despite the unit officials' having voted to release him. In another affidavit, Thomas clarifies, without mentioning Collins, that the state classification committee (SCC) made these decisions.

Collins' summary judgment evidence shows he was assistant warden of a different prison unit when Thomas was placed in administrative segregation. Collins was promoted to senior warden of his (not Thomas') prison unit in 1986. Collins was promoted to deputy director of operations over security for TDCJID in January 1987. Collins became director of TDCJID in 1990. As assistant and senior warden, Collins stated he had no input, knowledge, supervision, or authority over the units where Thomas resided. Collins also said he did not have input or authority in any of his positions to place prisoners in administrative segregation. Affidavits from two other prison officials involved in the decision to segregate Thomas corroborated that Collins had no input, control, or notice of Thomas' segregation proceedings. The summary judgment record includes the TDCJID Classification Plan, which indicates the SCC, not the TDCJID director, reviews prisoners' segregation status.[2] Thomas' mistaken assertion that Col-

---

1. "Lane purportedly never responded to Hanna's letter. Michael Lane is the director of the Illinois Department of Corrections. As director, Lane cannot be expected to involve himself with the minutiae of daily events in the lives of the thousands of prisoners incarcerated in Illinois prisons. Thus, Lane's failure to respond to Hanna's letter is not grounds for a claim of constitutional importance." *Id.* at 36.

2. The TDCJID classification plan makes the unit classification committee (UCC) responsible for administrative segregation assignments, conducting the 30–day review hearings for these inmates, and making segregation assignment recommen-

dations to the SCC. The plan makes the SCC responsible for reviewing and making decisions regarding administrative segregation inmates and reviewing their assignments to segregation. The SCC consists of a permanently assigned chairperson, vice-chairperson, and classification records office members. The plan provides prison officials within the inmate's unit, along with the administrative segregation supervisor, may authorize placement in administrative segregation. The required hearings for administratively segregated inmates are done at the unit level or by an SCC member. An inmate who has been administratively segregated may appeal the

lins was an SCC member does not raise a fact issue whether Collins denied release on these two occasions, in light of the evidence the SCC (not Collins) denied release.

### 3. Collins' Concurrence to Keep Thomas in Segregation

On July 17, 1987, while he was deputy director of operations over security for TDCJID, Collins concurred once in a unit classification committee (UCC) decision to maintain Thomas in administrative segregation. Thomas maintains this one concurrence raises a fact issue. We agree this evidence, viewed in the light most favorable to Thomas, raises a fact issue on Collins' personal involvement in the alleged violations related to his segregation for this one review period. We thus examine the summary judgment evidence of whether Thomas was deprived of his constitutional rights at this point in time.

Thomas alleges two violations of his constitutional rights. First, Thomas alleges he has been kept segregated in retaliation for exercising his First amendment right to sue and file grievances. Second, Thomas alleges his lengthy administrative segregation violated his Eighth amendment rights.[3]

### a. Claim for retaliation

Regarding the first claim, it is well settled prison officials may not retaliate against a prisoner for availing himself of the courts or attempting to defend his constitutional rights. *Woods*, 51 F.3d at 580. An inmate must show the violation of a specific constitutional right and establish that, but for the retaliatory motive, the violation would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995); *Aguilar v. Chastain*, 923 S.W.2d 740, 744 (Tex.App.—Tyler 1996, writ denied).

Collins and two officials involved in segregation decisions concerning Thomas swore Collins did not conspire to keep Thomas in segregation because of his grievances or suits. Collins said he did not know of Thomas' suits or grievances and did not retaliate against him. Collins also said, as deputy director, he could not focus on or retaliate against any one inmate because of the size of TDCJID. Collins also supplied documentation showing numerous offenses by Thomas, including threatening an officer, refusing to obey orders, and creating disturbances, during this period of Thomas' administrative segregation. In contrast, Thomas' only summary judgment evidence of retaliation relating to this review period was his subjective, personal belief Collins concurred in his segregation for this reason.[4] This is not enough to raise a fact issue on Thomas' retaliation claim. *See Woods*, 60 F.3d at 1166 (dicta);[5]

UCC's decision through the inmate grievance procedure.

3. On earlier appeals, it was determined Thomas adequately pled deprivation of these constitutional rights. *Thomas*, 860 S.W.2d at 502, 503. The law of the case doctrine does not prevent us from examining whether Thomas was in fact deprived of these constitutional rights, whether Collins disproved these violations as a matter of law, or whether Thomas raised a fact issue on them.

4. Thomas' summary judgment affidavits recite that officials other than Collins, long after Collins was director and after he had signed the concurrence at issue, voted to keep him in segregation in retaliation or without justification. This did not occur during the 1987 review period when Collins signed the concurrence, nor do the affidavits assert facts showing Collins' personal involvement. Thomas' affidavit also concludes that the cases against him could not have occurred without a conspiracy, because they occurred while he was in segregation. However,

the types of offenses with which Thomas was charged during this period were those which physically could have been committed even during segregation. One of Thomas' affidavits also claims the more violent disciplinary cases against him were not "completely true, nor false." This does not create a fact issue whether the cases were brought merely to retaliate rather than for legitimate purposes. Thomas produced numerous grievance forms in which he complained of retaliation and unjustified and lengthy segregation. However, each of these was made after the 1987 review period in which Collins concurred. One of Thomas' affidavits also asserts he did not commit the assault which resulted in his initial segregation. This has nothing to do with alleged retaliation during the 1987 review period in which Collins concurred in Thomas' case.

5. An inmate must show the violation of a specific constitutional right and establish that, but for the retaliatory motive, the violation would not have occurred. *Woods*, 60 F.3d 1161, 1166 (5th Cir. 1995). "This places a significant burden on the inmate. Mere conclusory allegations of retalia-

*Woods,* 51 F.3d at 580 (finding prisoner's personal belief that discrimination played a part in his extended lockdown did not raise a fact issue in the face of defendants' evidence that the prisoner's own actions were the reason for his lockdown); *cf. Johnson,* 110 F.3d at 310. We therefore find Collins carried his burden of showing no constitutional violation, while Thomas did not raise a fact issue on it.

**b. Claim for cruel and unusual punishment**

■ Thomas also asserts his extended segregation was disproportionate to any of his alleged offenses and, thus, cruel and unusual punishment. Thomas does not allege the conditions of his segregation constituted cruel and unusual punishment. Neither does Thomas allege he was denied due process in the application of segregation procedures.

■ Generally, prison officials are given broad discretion in administering prisons, and prisoners retain only a narrow range of protected liberty interests. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Woods,* 51 F.3d at 582.

■ Administrative segregation is not per se or necessarily unconstitutional. *See Kelly v. Brewer,* 525 F.2d 394, 399 (8th Cir. 1975); *Morris v. Travisono,* 549 F.Supp. 291, 294 (D.R.I.1982), *aff'd,* 707 F.2d 28 (1st Cir. 1983). However, segregated confinement may violate the Eighth amendment if it is extremely disproportionate, arbitrary, unnecessary, or without sufficient penological justification. *O'Brien v. Moriarty,* 489 F.2d 941, 944 (1st Cir.1974); *Adams v. Carlson,* 488 F.2d 619, 635–36 (7th Cir.1973); *Morris,* 549 F.Supp. at 295. Such a determination is a question of fact. *See Adams,* 488 F.2d at 636.

Again, we focus on the one review period when Collins concurred as deputy director in Thomas' segregation. The summary judg-

ment evidence reveals Thomas committed numerous offenses in 1987, some major and violent, justifying his segregation.[6] *See Adams,* 488 F.2d at 636. Based on the same summary judgment evidence outlined above, we find Collins carried his burden of showing no violation of Thomas' Eighth amendment rights during this time period, while Thomas did not raise a fact issue in reply.

Because the summary judgment evidence shows no constitutional deprivations during the time of Collins' one-time involvement, and no personal involvement by him otherwise, we overrule Thomas' points of error on this ground and affirm summary judgment with respect to Thomas' section 1983 claims.

### THOMAS' STATE LAW CLAIMS

Thomas alleges Collins intentionally caused him emotional distress by keeping him in administrative segregation without justification. Thomas also alleges Collins was part of a civil conspiracy to violate the constitutional rights discussed above.

■ The elements of intentional infliction of emotional distress are (1) the defendant acted intentionally and recklessly, (2) the conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the plaintiff's emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993); *Free v. Am. Home Assurance Co.,* 902 S.W.2d 51, 56 (Tex.App.—Houston [1st Dist.] 1995, no writ).

■ An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983); *Metzger v. Sebek,* 892 S.W.2d 20, 43 (Tex.App.—Houston [1st Dist.] 1994, writ denied). The elements are (1) two or

tion will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more practical scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

6. The TDCJID administrative segregation plan provides that whether the inmate would pose a threat to others if released is a factor to consider in segregation reviews. Whether the inmate's release would pose a threat to the institution's security, as evidenced by serious disciplinary violations, is another factor. The TDCJID classification plan defines the level one and two offenses which Thomas committed during 1987 as those which do or may pose an immediate and serious threat to others' safety or the institution's security.

more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *Massey*, 652 S.W.2d at 934; *Metzger*, 892 S.W.2d at 44.

The only defenses Collins' summary judgment asserted on the state law claims were (1) official immunity from suit and (2) no constitutional violations had occurred. We may affirm summary judgment on these grounds alone. *See Home Indem. Co. v. Pate*, 814 S.W.2d 497, 500 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

■■■ Government officials are entitled to official immunity from suit arising out of their performance of (1) discretionary duties (2) in good faith (3) and within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). The burden is on the defendant to establish all elements of this affirmative defense. *Id.* at 653.

■■■ If an action involves personal deliberation, decision, and judgment, it is discretionary. *Chambers*, 883 S.W.2d at 654; *Moore v. Collins*, 897 S.W.2d 496, 500 (Tex. App.—Houston [1st Dist.] 1995, no writ). Deciding who belongs in administrative segregation is obviously discretionary. *Cf. Thomas v. Collins*, 853 S.W.2d 53, 56 (Tex. App.—Corpus Christi 1993, writ denied) (holding action of affirming disciplinary proceeding was in a quasi-judicial capacity).

■■■ Thomas' petition alleges Collins acted in the scope of his authority. In concurring in the decision to keep Thomas segregated, Collins was acting within the scope of his authority.

■■■ An official acts in good faith if a reasonably prudent official could have believed his conduct to be lawful in light of clearly established law and the information known at the time. *Fowler v. Szostek*, 905 S.W.2d 336, 342 (Tex.App.—Houston [1st Dist.] 1995, no writ); *see Chambers*, 883 S.W.2d at 656. To controvert summary

judgment proof of good faith, the plaintiff must show no person in the defendant's position could reasonably have believed that the facts justified the defendant's acts. *Fowler*, 905 S.W.2d at 342.

■■■ Collins' affidavit recites all actions he took as a TDCJID employee were in good faith and reasonable. This conclusory statement may not be considered as summary judgment proof of good faith. *See Aldridge v. De Los Santos*, 878 S.W.2d 288, 296, 298 (Tex.App.—Corpus Christi 1994, writ dism'd w.o.j.). However, Collins' summary judgment proof, detailed above, indicates that a prudent official in Collins' position could reasonably have believed that concurring in Thomas' segregation decision was justified.[7] Collins thus carried his summary judgment burden to show good faith.

The burden then shifted to Thomas to show no reasonable person in Collins' position could have thought the circumstances justified concurring in the segregation decision. *See Fowler*, 905 S.W.2d at 342. As detailed above, Thomas did not meet this burden.

Accordingly, we find there is no fact issue concerning Collins' entitlement to official immunity with respect to the state claims against him.

We thus overrule Thomas' points of error on this ground.

We affirm the judgment.

O'CONNOR and TAFT, JJ., also participating.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I dissent.

The purpose of summary judgment is speedily to resolve a lawsuit where there are no fact issues, only legal ones. *Beech Aircraft Corp. v. Jinkins*, 698 S.W.2d 722, 728 (Tex.App.—Houston [1st Dist.] 1985), *aff'd,*

---

7. The claim of Collins' personal involvement in the constitutional violations alleged, as discussed above, forms the basis of all Thomas' claims, including those for civil conspiracy and intentional infliction of emotional distress. This 1987 administrative concurrence is the only involvement demonstrated by the summary judgment record.

739 S.W.2d 19 (Tex.1987). This case is re-plete with fact issues and should not be resolved by summary judgment.

To affirm this case, the majority turns the summary judgment procedure upside down. Contrary to the rules of summary judgment procedure, the majority indulges every infer-ence in favor of the movant for summary judgment (Collins), reviews the evidence in the light most favorable to the movant, as-sumes all the evidence in favor of the movant is true, and resolves all doubts as to the existence of a genuine issue of material fact in favor of the movant. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991). Once the majority finds a fact issue (and it does), it then resolves the fact issue against the non-movant, instead of remanding the case for trial.

No discovery has been conducted in this case. The purpose of summary judgment is not to deprive a litigant of a trial by jury. *Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 795 (Tex.App.—Beaumont 1988, writ denied). Neither is it the purpose to replace a jury trial with a trial by affidavit. *Davenport v. Harrison,* 711 S.W.2d 340, 341 (Tex.App.—Texarkana 1986, no writ). This case should be remanded for trial.

I agree with the two earlier opinions in this case, one from the El Paso Court of Appeals, *Thomas v. Collins,* No. 08–91–00246–CV (Tex.App.—El Paso, Feb. 26, 1992, no writ) (unpublished), and the other from this Court, *Thomas v. Collins,* 860 S.W.2d 500 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Both opinions reversed the trial court's dismissal and held Dan Thomas ade-quately pled a 42 U.S.C. § 1983 claim against James A. Collins, the director of TDCJID.

Here, for the first time, and after Thomas has been held for over 11 years in punitive detention, another panel affirms a summary judgment and says that Thomas has no § 1983 claim. Both a summary judgment and a dismissal of a pro se suit under TEX. CIV. PRAC. & REM.CODE § 13.001 (1997) are

based on the pleadings and the absence of facts. Under the law of the case doctrine, we should remand for trial, because the legal issue has already been resolved against Col-lins by two earlier opinions. Thomas de-serves a jury trial.

In his petition, Thomas alleged Collins and his staff (1) denied him rights under the U.S. Constitution's First and Fourteenth Amend-ments, (2) violated civil conspiracy laws, (3) violated his Eighth Amendment rights under the U.S. Constitution, and (4) engaged in the intentional infliction of emotional distress. In his summary judgment pleadings, Thomas asserts Collins (1) was directly involved in the decision to keep him segregated, and (2) had constructive or personal knowledge of his situation, but consented to or did not act on it.

This panel holds that Collins was not **per-sonally** involved in any violations and he could not be held vicariously liable for his subordinates' violations. In our earlier opin-ion we said the opposite:

> Collins argued ... he cannot be sued be-cause he did not have actual knowledge nor was he directly involved in the alleged events that deprived Thomas of his consti-tutional rights.

> .    .    .    .    .

> Reviewing appellant's pleadings under this standard, [Thomas'] allegations are suffi-cient to allege that Collins violated his clearly established eight amendment rights. Collins is in a position to reason-ably know that confinement in isolation inappropriately or for too long a duration can result in a violation of eight amend-ment rights.

*Thomas,* 860 S.W.2d at 502–03.

It is simply incredible that an inmate could have been held in punitive segregation for 11 years without its coming to the attention of Collins, who was deputy director of opera-tions over security for TDCJID, and, since 1990, the director of TDCJID.[1] In 1987, as deputy director, Collins was once directly

---

1. Thomas filed this suit on April 11, 1991, one year after Collins became director of TDCJID. At that time, he had been in detention for six years. Thomas' detention continued during his lawsuit.

involved in Thomas' detention.[2] There is clearly a fact issue here that should survive a motion for summary judgment.

Collins, as a person in authority, cannot escape responsibility for his acts by delegating his duties to others. To believe that Collins did not know about Thomas' 11 years of punitive segregation, we would have to believe that, as director, Collins had no responsibility for the letters he received from inmates, that he had no responsibility for information contained in lawsuits, filed against him in his personal and official capacity, that have been pending for over six years, and that he had no interest in the inmates who had been in punitive segregation for five years or more. If Collins had no interest or responsibility for the workings of the TDCJID, one wonders what interests and responsibilities he had as director of TDCJID.[3]

The majority is resolving this case based on a summary judgment affidavit by Collins that he did not do anything, he did not see anything, he did not hear anything that would make him responsible. Yet, by his very position as deputy director and later director, he has responsibility to oversee the TDCJID. A defendant cannot file an affidavit stating that he is not responsible for any of the allegations in the plaintiff's petition, and by that be entitled to a summary judgment, when the plaintiff's petition alleges he was responsible.

As an interested witness, Collins' affidavit must be clear, positive, direct, credible, free from contradictions, and it must be susceptible to being readily controverted. TEX.R. CIV. P. 166a(c). Collins' affidavits, which contain self-serving statements of interested parties about what they knew or intended, are not readily controvertible. *Font v. Carr,* 867 S.W.2d 873, 879 (Tex.App.—Houston [1st Dist.] 1993, no writ) (prosecutor's affidavit that he acted in good faith could not be readily controverted). When the credibility

of the affiant, here Collins, is likely to be a dispositive factor in the resolution of the case, summary judgment is not appropriate. *Casso v. Brand,* 776 S.W.2d 551, 557 (Tex. 1989).

The majority finds that Thomas created a fact issue:

> We agree this evidence, viewed in the light most favorable to Thomas, raises a fact issue on Collins' personal involvement in the alleged violations related to his segregation for this one review period.

Then, after reviewing the summary judgment evidence, it decides the fact issue against Thomas. If Thomas created a fact issue, that issue should be resolved at trial, not in a summary judgment procedure.

I would reverse and remand for a trial.

COHEN and TAFT, JJ., also participating.

## OPINION ON MOTION FOR REHEARING EN BANC

PER CURIAM.

Dan Thomas, appellant, has filed a motion for rehearing en banc. After due consideration, we **overrule** the motion for rehearing en banc.

It is so **Ordered.**

SCHNEIDER, C.J., and COHEN, MIRABAL, O'CONNOR, WILSON, HEDGES, ANDELL, TAFT and NUCHIA, JJ., not participating.

O'CONNOR, J., dissenting.

---

2. On July 17, 1987, Collins concurred in a UCC decision to maintain Thomas in administrative segregation. The majority reviews that one instance in isolation and decides, on a summary judgment record, that Thomas did not prove Collins violated Thomas' constitutional rights during that period.

3. It is a matter of public record that Collins is presently under investigation by two federal grand juries, one in Texas and one in Louisiana, about conflicts of interest while he was director of TDCJID.