

**NUMBER 13-08-00303-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**KEN SCOTT,**                                             **Appellant,**

**v.**

**RICHARD L. CRITES, ET AL.,**                         **Appellees.**

---

**On appeal from the 36th District Court
of Bee County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Ken Scott, an inmate proceeding pro se and in forma pauperis, filed a lawsuit against various employees of the Texas Department of Criminal Justice-Institutional Division (TDCJ) under title 42, section 1983 of the United States Code. *See* 42 U.S.C. § 1983. In three issues, Scott contends that the trial court erred by: (1) "overstepping its role as trier of fact"; (2) dismissing his suit under chapter 14 of the Texas Civil Practices and Remedies Code; and (3) failing to hear or rule on his motion for default judgment. *See*

TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.001-.014 (Vernon 2002).  We affirm.

## I. BACKGROUND

On November 18, 2006, Scott, a Cherokee Native American, entered a search area prior to a scheduled visitation with his spouse.  Christopher Ramirez, a TDCJ employee in charge of searching inmates, demanded Scott empty the contents of a small, sealed medicine pouch that he was wearing around his neck.  Scott explained that opening the pouch would destroy both the pouch and its contents.  Ramirez called his supervisor, Cirildo Puentes, a captain of corrections, to assist with the matter.  Puentes informed Ramirez that he (Puentes) was unfamiliar with TDCJ policies regarding Native American religious articles, and instructed Ramirez to allow Scott to proceed to visitation.  Ramirez complied.

During visitation, Scott left the visitation area to use the restroom.  Upon his return, Scott was again stopped by Ramirez, and Puentes was called.  Puentes, accompanied by Joann Garcia, a sergeant of corrections, approached Scott and stated that the TDCJ policy was that a medicine pouch should only be worn in housing areas or Native American ceremonies, and must be "dumped" upon demand of an officer.  Scott was again asked to empty the contents of the pouch; he refused.  Richard Crites, assistant warden, entered the search area and ordered Scott to open the pouch; Scott complied.

After exhausting his administrative remedies, Scott, proceeding pro se and in forma pauperis, filed suit under title 42, section 1983 of the United States Code against Crite, Puentes, Garcia, and Ramirez, in their individual capacities, for alleged violations of his constitutional right to freely practice religion.  *See* 42 U.S.C. § 1983.  The defendants did not file an answer.  The trial court issued an order requesting an amicus curiae from the attorney general regarding whether Scott had complied with the requirements of chapter

2

14. In response, the attorney general filed an amicus curiae suggesting that, because there is no probability Scott would prevail, his suit should be dismissed as frivolous.

In response, Scott filed a "Motion to Strike." The court denied the "Motion to Strike" after noting that the body of the motion to strike referred to a "Motion to Recuse Defense Counsel." The court found that "any Motion to Recuse Defense Counsel would be moot as there is no defense counsel of record in this case, only the Amicus Curiae Advisory. [Scott]'s Motion to Strike the Amicus Curiae Advisory filed by the Attorney General . . . is Denied." In its order denying Scott's motion to strike, the court declined to issue a decision regarding whether Scott's lawsuit should be dismissed pursuant to chapter 14; instead, the court requested that Scott submit a brief demonstrating that his cause of action was meritorious. On February 21, 2008, Scott submitted a brief asserting that the defendants had violated his constitutional rights, as well as his rights under the Religious Land Use and Incarcerated Persons Act (RLUIPA).[1]

On March 24, 2008, Scott filed a motion for default judgment. Without holding a hearing or ruling on Scott's motion for default judgment, the trial court dismissed Scott's lawsuit as frivolous under chapter 14. This appeal ensued.

## II. TRIAL COURT DID NOT "OVERSTEP ITS ROLE AS TRIER OF FACT"

In his first issue, Scott essentially contends that the trial court became an advocate for the defendants by sua sponte dismissing his lawsuit under chapter 14. Section 14.003(a) provides that a "court may dismiss a claim, either before or after service of process, if the court finds that . . . the claim is frivolous or malicious . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a)(2). "Because a trial court is authorized to dismiss a claim

___

[1] Scott does not contend that TDCJ policies concerning Native Americans are unconstitutional or violate the Religious Land Use and Incarcerated Persons Act (RLUIPA). Instead, he contends that there was an "intentional and malignant" violation of his rights because TDCJ officials "believe [t]hat they can do whatever they choose" and "disregard" the rights of a Native American.

*before* service of process, i.e., before the defendant has filed an answer," we conclude that the court had the authority to dismiss Scott's action even though the defendants failed to file an answer. *McCollum v. Mt. Ararat Baptist Church*, 980 S.W.2d 535, 537 (Tex. App.–Houston [14th Dist.] 1998, no pet.) (emphasis in original) (noting that a trial court's authority to dismiss a claim where the defendant fails to file an answer is consistent with chapter 14's purpose of controlling frivolous lawsuits). Scott's first issue is overruled.

## II. TRIAL COURT DID NOT ERR IN DISMISSING SUIT UNDER CHAPTER 14

In his second issue, Scott contends that the court erred by dismissing his lawsuit under chapter 14 of the civil practice and remedies code.

### A.    Applicable Law and Standard of Review

Chapter 14 of the civil practice and remedies code governs suits brought by an inmate (except suits brought under the family code) in which the inmate files an affidavit or unsworn declaration of inability to pay costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.001; *Thomas v. Knight*, 52 S.W.3d 292, 294 (Tex. App.–Corpus Christi 2001, pet. denied). The suit may be dismissed under chapter 14 if the court finds the lawsuit is frivolous or malicious. TEX. CIV. PRAC. & REM. CODE ANN. § 14.002. Generally, we review the dismissal of a lawsuit brought by an inmate who has filed an affidavit or a declaration of inability to pay costs under an abuse of discretion standard. *Jackson v. Tex. Dep't of Criminal Justice-Inst. Div.*, 28 S.W.3d 811, 813 (Tex. App.–Corpus Christi 2000, pet. denied). However, when the trial court dismisses the suit without an evidentiary hearing, we may affirm that decision only if the suit has no arguable basis in law. *Long v. Tanner*, 170 S.W.3d 752, 754 (Tex. App.–Waco 2005, pet. denied) (citing *Retzlaff v. Tex. Dep't of Criminal Justice*, 94 S.W.3d 650, 653 (Tex. App.–Houston [14th Dist.] 2002, pet. denied); *Smith v. Tex. Dep't of Criminal Justice-Inst. Div.*, 33 S.W.3d 338, 340 (Tex.

4

App.–Texarkana 2000, pet. denied)).  We apply a de novo standard of review to this issue. *Long*, 170 S.W.3d at 754.

In conducting our de novo review, we take the allegations of Scott's petition as true, and review the types of relief and causes of action set out therein to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief.  *See Scott v. Gallagher*, 209 S.W.3d 262, 266 (Tex. App.–Houston [1st Dist.] 2006, no pet.); *see also Harrison v. Tex. Dep't of Criminal Justice, Inst. Div.*, 164 S.W.3d 871, 875 (Tex. App.–Corpus Christi 2005, no pet.).  A claim has no arguable basis in law if it is an indisputably meritless legal theory.  *Scott*, 209 S.W.3d at 266.

## B.    Analysis

Scott, seeking monetary damages, asserts a cause of action against each of the four aforementioned appellees in their individual capacities under title 42, section 1983 of the United States Code, which provides a remedy when persons acting under color of state law deprive another of rights, privileges, or immunities protected by the United States Constitution or laws.  *Gordon v. Scott*, 6 S.W.3d 365, 369 (Tex. App.–Beaumont 1999, pet. denied) (citing *Thomas v. Collins*, 960 S.W.2d 106, 109 (Tex. App.–Houston [1st Dist.] 1997, writ denied)).  Scott's complaints are primarily based on his rights under RLUIPA. *See* 42 U.S.C. §§ 2000cc–2000cc-5.

RLUIPA claims use the substantial burden test to determine whether a violation of a plaintiff's religious free exercise rights has occurred.  *See* 42 U.S.C. §§ 2000cc-1(a); 2000cc-2(b); *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007).  To prevail under RLUIPA, an inmate bears the initial burden of demonstrating that the challenged policy substantially burdens his exercise of religion.  *Id.*  A "substantial burden" on a religious exercise exists where a government action or regulation "truly pressures the adherent to

5

significantly modify his religious behavior and significantly violate his religious beliefs." *Baranowski*, 486 F.3d at 124. If the inmate succeeds in making this prima facie showing, the burden shifts to the defendants to demonstrate that the challenged polices are the least restrictive means of furthering a compelling state interest. *Id.*

The attorney general's amicus curiae provides relevant portions of The TDCJ Chaplaincy Policy Manual ("the manual"). The manual defines a "medicine bag" as a "small (maximum 2 [inch] square) [bag] . . . made of pliant animal skin sewn or laced together to create a pocket. It is connected to a leather or fabric thong that is worn around the neck." It is undisputed that Scott's "medicine pouch" meets the TDCJ definition of "medicine bag." The manual states, "In prison, wearing the medicine bag is limited to the offender's cell or immediate bunk area in a dorm setting and to and from religious services." It is undisputed that on the occasion in question, Scott was wearing his medicine bag to the visitation area, an area that is not his "immediate bunk area." Scott does not contend that he was en route to the visitation area for religious services; instead, he admits that he was meeting his spouse for scheduled visitation.

Additionally, the manual states, "The bag and its contents may be visually inspected at any time for valid security reasons." Scott contends that the TDCJ officials lacked a valid security reason to search his medicine bag because it was "sealed." The manual does not distinguish between sealed and unsealed medicine bags. In an affidavit attached to the attorney general's amicus curiae, Reynaldo Castro, Regional Director of the Correctional Institution Division of TDCJ, states, "The security risk posed by a medicine bag stems from the fact that objects, which pose a risk to security, may be hidden in it." Scott does not challenge this policy with regards to unsealed medicine bags, and he presents no argument addressing how the TDCJ policy substantially burdens his exercise

6

of religion. *See id.*

In the present case, Scott does not contend that either the policy or TDCJ officials substantially burdened his religion; instead, he argues that the initial burden is on TDCJ officials because they have not proven that they used the "least restrictive means" when demanding that Scott open his medicine pouch. Because Scott has failed to demonstrate, or even argue, that the TDCJ policy regarding medicine bags substantially burdened his exercise of religion, we conclude that his claim has no arguable basis in law. *See id.* We overrule Scott's second issue. For this reason, we need not consider Scott's third issue. *See Gill v. Russo*, 39 S.W.3d 717, 719 (Tex. App.–Houston [1st Dist.] 2001, pet. denied) (motion for default judgment considered moot where trial court dismissed the suit).

## IV. Conclusion

Having overruled all of Scott's issues, we affirm the trial court's judgment.

ROGELIO VALDEZ
Chief Justice

Memorandum Opinion delivered and
filed on this 26th day of August, 2009.

7