Parvin G. GIDVANI, Appellant,

v.

Jerome ALDRICH, Appellee.

No. 01–00–01326–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 7, 2003.

Raymond D. Davis, Davis & Thomas L.L.P., Houston, for Appellant.

Raethella Jones, Assistant District Attorney, Angleton, for Appellee.

Panel consists of Justices HEDGES, JENNINGS, and MIRABAL.*

## OPINION

MARGARET GARNER MIRABAL, Justice (Assigned).

Appellant, Parvin G. Gidvani (Gidvani), is appealing a summary judgment rendered in favor of appellee, Jerome Aldrich (Aldrich). In four issues, Gidvani asserts

---

the trial court erred in granting summary judgment against him on his causes of action for interference with his right of interment and intentional infliction of emotional distress. We affirm.

### Factual Background and Procedural History

The undisputed summary judgment evidence shows that in the Fall of 1996, Gidvani and Nita Kapoor (Nita) were married. Shortly after the marriage, Gidvani purchased a life insurance policy on the life of his wife from Farmers Insurance, worth $150,000, and named himself as the primary beneficiary. Gidvani also purchased an additional $100,000 policy on the life of his wife for accidental death coverage.

A few weeks after Gidvani received the policy, Nita drowned in a swimming pool in Acapulco, Mexico, during the couples' honeymoon. The private swimming pool was three feet deep and adjacent to the couple's hotel room. Harina Kapoor, Nita's sister, suspected foul play and contacted the Mexican police. As part of the ensuing investigation, Mexican authorities performed an autopsy on Nita's body and determined that her death was a result of an accidental drowning.

While Gidvani was still in Mexico, his father contacted Southpark Funeral Home (Southpark), in Pearland, Brazoria County, Texas to arrange Nita's funeral. On March 1, 1997, upon arrival at the Houston airport, Southpark transported Nita's body to its funeral home. Gidvani intended to cremate Nita's body on the following day, the 12th day after her death, in accordance with Hindu tradition.

On March 2, the day Nita's body was to be cremated, Aldrich, the Criminal District

---

* Former Justice, Court of Appeals, First District of Texas at Houston, participating by     assignment.

Attorney for Brazoria County, was informed, for the first time, about the circumstances surrounding Nita's death. During Aldrich's deposition, he stated that, while he was attending church, he received a page from Assistant District Attorney Maria Kohlkorst. Kohlkorst informed Aldrich that:

(1) Gidvani was at a funeral home in Brazoria County, demanding that the body of his wife be cremated;

(2) the couple had an arranged marriage, and had been married approximately one month when his wife was found dead;

(3) the couple was on their honeymoon in Acapulco, Mexico, and the honeymoon had been delayed until Gidvani could obtain a million[1] dollar life insurance policy on his wife; and

(4) the couple arrived in Mexico on Friday, and Nita was found dead in a 3 foot deep swimming pool, attached to the couple's hotel room, on Saturday morning.

Immediately after his conversation with Kohlkorst, Aldrich contacted the Honorable Bill Todd, Justice of the Peace in Brazoria County, and orally requested that an autopsy be performed on Nita's body.[2] The autopsy was ordered and performed in Galveston County. Nita's remains were returned to Gidvani on March 7, and the cremation and funeral were held on March 8.

Four months later, the medical examiner completed the autopsy and concluded, as did his Mexican counterpart, that Nita accidentally drowned. Gidvani then sued Aldrich, Farmers Insurance, and Southpark,[3] for interference with his right of interment and intentional infliction of emotional distress.

Aldrich moved for summary judgment, asserting the affirmative defenses of absolute and official immunity, in addition to challenging the viability of Gidvani's causes of action alleging interference with the right of interment and intentional infliction of emotional distress. The trial court granted Aldrich's motion for summary judgment without specifying the grounds upon which the order was based. The judgment became final after the trial court severed Gidvani's claims against Aldrich from his claims against Farmers and Southpark. Gidvani then filed this appeal.

### *Summary Judgment*

#### *Standard of Review*

Aldrich filed a traditional motion for summary judgement. TEX.R. CIV. P. 166a(c). Summary judgment is proper only when the movant proves there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex. App.-Houston [1st Dist.] 1993, writ denied). A defendant moving for summary judgment on the basis of an affirmative defense must conclusively prove all essential elements of that defense. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); *Bangert v. Baylor Coll. of Med.*, 881 S.W.2d 564, 566 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

When evaluating a summary judgment, we assume all evidence favorable to the non-movant is true. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). We indulge every reasonable inference in

---

**1.** This information was later determined to be incorrect.

**2.** The following day, the oral request was reduced to writing.

**3.** Gidvani also sued Southpark for breach of contract and violation of its duties as an undertaker. However, these issues are not important to this appeal.

favor of the non-movant. *Id.* We resolve all doubts about the existence of a genuine issue of any material fact against the movant. *Johnson Cty. Sheriff's Posse, Inc. v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996). If the movant shows he is entitled to judgment as a matter of law, the non-movant must present evidence raising a fact issue in order to defeat summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Haight v. Savoy Apartments,* 814 S.W.2d 849, 851 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

When a movant asserts multiple grounds for summary judgment, and the order does not state the theory upon which the trial court based its judgment, as in this case, the non-movant on appeal must negate any grounds on which the trial court could have granted the order. *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). Otherwise, we will affirm the summary judgment if any one of the theories advanced is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

### Official Immunity

In his second issue, Gidvani claims the trial court erred by granting summary judgment on the affirmative defense of official immunity.

■ Official immunity is a common law defense that protects government officers from personal liability. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653–54 (Tex.1994); *Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994). In order to be entitled to official immunity, Aldrich had the burden to show that (1) he was performing a discretionary duty, (2) which was within the scope of his authority, and (3) that he acted in good faith. *Chambers,* 883 S.W.2d at 653.

### Discretionary Duty

■ According to the Texas Supreme Court, discretionary decisions receive protection, but ministerial duties do not. *Chambers,* 883 S.W.2d at 654. An act is considered discretionary if it "involves personal deliberation, decision, and judgment." *Id.* If, however, "the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment," it is a ministerial duty. *Id.*

In this case, Aldrich's decision to request an autopsy and investigate whether Gidvani committed a crime was clearly a discretionary decision. Thus, the first prong of the test is satisfied.

### Scope of Authority

■ In evaluating whether Aldrich had "authority and jurisdiction" to act, we inquire whether Aldrich had the authority to perform the challenged act, not whether the act was proper or improper. *See Bradt v. West,* 892 S.W.2d 56, 70 (Tex. App.-Houston [1st Dist.] 1994, writ denied).

Gidvani argues that Aldrich is not entitled to official immunity because he did not have (1) "jurisdiction" to investigate and prosecute Gidvani, or (2) the "authority" to request an autopsy on Nita's body.

However, as the District Attorney for Brazoria County, Aldrich has jurisdiction to investigate and prosecute any crime if at least one element of that crime takes place in his jurisdiction. *See* TEX. PENAL CODE ANN. § 1.04(a)(1) (Vernon 1994) (providing state has jurisdiction over an offense that person commits by his own conduct if "either the conduct or a result that is an element of the offense occurs inside this state"); TEX.CODE CRIM. PROC. ANN. art. 2.01 (Vernon Supp.2003) (stating district attorney shall represent State in all criminal cases in district courts of his district).

Under Texas law, a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of

property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp.2003). Appropriation is defined as "without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(b)(1). "Effective consent" is defined as consent not "induced by **deception** or coercion." TEX. PENAL CODE ANN. § 31.01(3)(A). Deception is defined as, among other things, **"preventing another from acquiring information likely to affect his judgment in the transaction."** Tex. Penal Code Ann. § 31.01(1)(C). (Emphasis added).

In this case, Aldrich had jurisdiction to investigate Gidvani for theft because he had reason to believe the element of deception, as it is defined by the penal code, was being committed in Brazoria county. The summary judgment evidence shows that Aldrich believed that, by Gidvani's insistence that his wife's remains be immediately cremated, Gidvani was preventing another, i.e., the insurance company, from acquiring information likely to affect its judgment in paying out the policy.

Furthermore, as a criminal district attorney, Aldrich had the authority to request that an autopsy be performed on Nita's remains. TEX.CODE CRIM. PROC. ANN. art. 49.10(e)(3) (Vernon Supp.2003). According to article 49.10(e)(3) of the Texas Code of Criminal Procedure:

> (e) A justice of the peace shall order an autopsy performed on a body if:
>
> (3) directed to do so by the District Attorney, **criminal district attorney,** or, if there is no district or criminal district attorney, the county attorney.

*Id.* (emphasis added).

Therefore, Aldrich was acting within the scope of his authority when he decided to investigate Gidvani and request an autopsy on Nita's body.

### *Good Faith*

■■ The only issue left to resolve is whether Aldrich was acting in good faith.

This Court measures good faith in official immunity cases against a standard of objective reasonableness without regard to the official's subjective state of mind. *Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997); *Chambers,* 883 S.W.2d at 656; *see also Cobb v. Tex. Dep't of Criminal Justice,* 965 S.W.2d 59, 64 (Tex.App.-Houston [1st Dist.] 1998, no writ); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 121 (Tex.App.-Houston [1st Dist.] 1995, no writ). Good faith may be established by Aldrich's own sworn statement, *Barker v. City of Galveston,* 907 S.W.2d 879, 888 (Tex.App.-Houston [1st Dist.] 1995, writ denied), or by expert testimony. *Wadewitz,* 951 S.W.2d at 466. In order to satisfy his burden of proof, Aldrich had to show that his acts were within the realm of what a reasonably prudent government official could have believed was appropriate at the time in question. *See Roberts v. Foose,* 7 S.W.3d 311, 314 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Thomas v. Collins,* 960 S.W.2d 106, 113 (Tex.App.-Houston [1st Dist.] 1997, pet. denied).

In this case, Aldrich's summary judgment evidence consisted of excerpts from his own affidavit and his deposition testimony. During his deposition, Aldrich stated that Assistant District Attorney, Maria Kohlkorst, informed him that on March 2, 1997, Gidvani was at Southpark Funeral Home in Brazoria County, demanding that the body of his wife be cremated. Aldrich testified Kohlkorst told him that Gidvani and Nita had an arranged marriage, and that they had been married approximately a month before his wife was found dead. Aldrich also testified that Kohlkorst told him that the couple was on their honeymoon in Acapulco, Mexico, and that the honeymoon had been delayed until Gidvani could obtain a million dollar life insurance policy on his wife. He was also told that the couple arrived in Mexico on Friday, and that Nita's body was found dead in a

three foot deep swimming pool, attached to the couple's hotel room, on Saturday morning.

In his affidavit, Aldrich stated he:

felt the suspicious nature of the circumstances surrounding [Nita's] death warranted a criminal investigation of her husband, Parvin Gidvani. I believed the death may have been caused in an attempt to commit insurance fraud based on the facts that were explained to me. I investigated the facts and circumstances surrounding [Nita's] death and requested an autopsy of her remains in my sole capacity as Criminal District Attorney of Brazoria County, Texas, pursuant to the authority given me by the State of Texas.

Based on this rendition of the facts, a reasonably prudent district attorney could have believed Gidvani was committing a crime in his jurisdiction, thereby warranting the request for an autopsy. *See Foose,* 7 S.W.3d at 314 (holding official's summary judgment evidence sufficient to shift burden to plaintiff where offense report described relevant facts which justified officer's conduct); *Collins,* 960 S.W.2d at 113 (same). Thus, we hold that Aldrich carried his summary judgment burden of showing his actions were made in good faith. *See Foose,* 7 S.W.3d at 314; *Collins,* 960 S.W.2d at 113.

In order to defeat Aldrich's summary judgment, Gidvani was required to file summary judgment evidence to the effect that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Kmiec,* 902 S.W.2d 118, 121 (quoting *Chambers,* 883 S.W.2d at 657). According to the *Chambers* court, "our good faith test sets an elevated standard of proof for the non-movant seeking to defeat a claim of official immunity in response to a motion for summary judgment." *Chambers,* 883 S.W.2d at 656.

Here, nothing in Gidvani's summary judgment evidence addresses how a reasonable district attorney would have acted differently than Aldrich under the same circumstances. *See Kmiec,* 902 S.W.2d 118, 121 (holding summary judgment proper where plaintiff failed to submit evidence to rebut reasonableness of government official's conduct).

Thus, we conclude that the uncontroverted summary judgment evidence showed Aldrich acted in good faith when he (1) decided to investigate the allegations against Gidvani, and (2) when he requested an autopsy on Nita's body. *See Kmiec,* 902 S.W.2d 118, 121. Gidvani did not raise a fact issue as to Aldrich's good faith.

We overrule Gidvani's second issue.

In light of our conclusion that summary judgment was proper based on the affirmative defense of qualified immunity, it is unnecessary for us to reach the merits of Gidvani's remaining issues, and we decline to do so.

We affirm the judgment.