**Terry Joe ADAMS, Jr., Appellant,**

v.

**Cliff DOWNEY, Appellee.**

No. 01–02–00691–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 20, 2003.

Rehearing Overruled Jan. 23, 2004.

Chris M. Portner, Reaud, Morgan & Quinn, Beaumont, TX, for Appellant.

Ray Schorre, Rick Lopez, David M. Feldman, Feldman & Rogers, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices HEDGES, NUCHIA and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Terry Joe Adams, Jr. ("Adams") challenges the summary judgment granted by the trial court in favor of appellee, Cliff Downey ("Downey"). The summary judgment was granted on basis of official immunity. Because we hold that Downey did not conclusively establish good faith, a necessary element of official immunity, we reverse the trial court's summary judgment and remand for further proceedings.

### Background Facts

As coordinator for the Alvin Community College Police Academy ("the academy"), Downey was responsible for administering and conducting the daily operations of the academy. Downey's duties included planning and administering training scenarios for the police cadets attending the academy. These training scenarios are known in law-enforcement vernacular as "close training exercises." The close training exercises simulate real-life situations that a police officer may experience in the field. The close training exercises often provide a cadet with the only practical experience that he may receive before being sent into the field as a police officer.

On April 10, 1999, Adams, who was a cadet at the academy, participated in various close training exercises. While participating in these exercises, the cadets carried handguns loaded with blank rounds. Downey had decided to put blank rounds in the cadets' handguns to add an element of realism to the training exercises. Downey selected Jesse Harris ("Harris"), an academy graduate and licensed peace officer, to oversee the cadets during the scenarios that day.

At the end of the last training exercise, Adams was in the process of handcuffing a "suspect" when Harris criticized Adams for standing in such a way that would allow the suspect to grab Adams's handgun from his holster. Harris proceeded to demonstrate how easily the suspect could have grabbed the firearm from Adams. During the demonstration, and while Harris had Adams's handgun, the handgun discharged, shooting Adams in the face.

## Procedural History

Adams survived his injuries and filed suit against Downey, Harris, and two other employees of the academy, Ron Gilstrap and D.A. Miller. In his second amended petition, Adams alleged that the following acts and omissions of Downey constituted negligence: (1) authorizing the use of blanks for close training exercises; (2) failing to require students to wear protective eyewear; and (3) authorizing Harris, an individual without any firearms-instructor training, to supervise a scenario involving firearms. Adams alleged that he suffered severe injuries to his eyes and face as a result of Downey's acts and omissions.

Downey, Gilstrap, and Miller moved for summary judgment, asserting two

grounds: (1) Adams's claims were barred by a release signed by Adams and (2) the defendants were entitled to official immunity from Adams's claims. Before the trial court considered the motion for summary judgment, Adams agreed to dismiss defendants Gilstrap and Miller.[1] Thus, when the trial court heard the motion for summary judgment, it was related to Adams's negligence claims against Downey only.

Following a hearing, the trial court expressly granted the motion for summary judgment on the basis of official immunity. The trial court expressly denied the motion on the basis that Adams had released his claims against Downey. The trial court also granted a motion to sever Adams's claims against Downey, making the summary judgment final.[2] In a single issue on appeal, Adams complains that the trial court erred in granting Downey's motion for summary judgment on the ground of official immunity.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). In reviewing a summary judgment, we accept as true all evidence supporting the non-movant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the non-movant's favor. TEX.R. CIV. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951

---

1. The trial court later signed an order dismissing Gilstrap and Miller.

2. After the trial court granted the motion to sever Adams's claims against Downey, Adams's claims against Jesse Harris remained pending in the trial court.

S.W.2d 420, 425 (Tex.1997); *Gidvani v. Aldrich*, 99 S.W.3d 760, 762–63 (Tex.App.-Houston [1st Dist.] 2003, no pet.). To be entitled to summary judgment on an affirmative defense such as official immunity, a defendant must conclusively prove all the elements of the defense. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *Gidvani*, 99 S.W.3d at 763.

## Official Immunity

■ As a governmental employee, Downey was entitled to official immunity (1) for the performance of discretionary duties, (2) within the scope of his authority, (3) for acts he performed in good faith. *Clark*, 38 S.W.3d at 580. No dispute exists whether Downey's conduct in planning and administering the close training exercises occurred within the scope of Downey's authority as coordinator of the academy and during the performance of discretionary duties. Rather, the issue presented is whether Downey conclusively established, as a matter of law, that he acted in good faith.

## Good Faith

■ To establish good faith as a matter of law, Downey is required to show that a reasonably prudent coordinator, under the same or similar circumstances, could have believed that loading the cadets' handguns with blanks, failing to require the cadets to wear protective eyewear, and selecting Harris to oversee the cadets, was justified based on the information he possessed. *See Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex.2002). Downey is not required to show that the only reasonable manner to plan and administer the close training exercises is the manner that he did, or that all reasonably prudent coordinators would have acted as he did. *See id.* Rather, he must prove only that a reasonably prudent coordinator, under

similar circumstances, might have decided to plan and administer the close training exercises as he did. *Id.* Even if Downey acted negligently, good faith is not defeated. *Id.* The test is not "what a reasonable person would have done," but "what a reasonable [coordinator] could have believed." *Id.* In conducting our review, we must measure good faith in official immunity cases against a standard of objective reasonableness, without regard to the official's subjective state of mind. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex.1994); *Gidvani*, 99 S.W.3d at 764. Only if Downey meets his burden of proof on good faith does the burden shift to Adams to produce controverting evidence—that is, Adams then must show that no reasonable person in Downey's position could have thought the facts were such that they justified Downey's conduct. *Chambers*, 883 S.W.2d at 656–57.

■ In this case, contradictory evidence related to the material facts underlying Downey's claim of good faith exists in the record. The parties dispute the material facts related to (1) Downey's assignment of Harris to oversee the close training exercises, (2) Downey's decision to load the cadet's handguns with blanks, and (3) Downey's failure to require the cadets to wear protective eyewear during the training exercises.

Downey offered both his own deposition testimony and that of Adams in support of his motion for summary judgment. In his deposition, Downey testified that, before the training exercises began, he instructed the cadets that their firearms were not to be discharged and that a training exercise would be stopped if a weapon was drawn. In contrast, Adams testified that Downey told the cadets on the morning of the training exercises that they could dis-

charge their weapons.[3] Specifically, Adams stated that Downey told the cadets that they could "shoot the perpetrator," but that the cadets were to "keep it below the chest and face area."

The parties do not dispute that Downey selected Harris to be an "evaluator" of the cadets for the close training exercises. But conflicting proof exists in the record whether, as an evaluator, Harris was permitted to engage in instruction of the cadets.

In his deposition, Downey testified that he selected Harris to evaluate the cadets' performance during the training exercises. According to Downey, it was Harris's task to observe the cadets during the exercises and fill out evaluation forms regarding the performance of the cadets. Downey testified that he instructed Harris that "basically his task was to do the evaluation." In the event that a fight occurred between the cadets or a cadet pulled a firearm, Harris was also charged with stopping the training exercises. When Downey was asked whether Harris was to instruct the cadets, Downey stated, "no," and that he had "intended" that the cadets' instructor, Captain Terry Lucas, would review the evaluation forms with the cadets at a later time.

In his motion for summary judgment, Downey asserted that he "instructed Harris" that he was *not* to provide instruction to the cadets." (Emphasis in original.) However, Downey cited no record reference in support of this assertion. The pages of Downey's deposition offered in support of his motion for summary judgment reveal no testimony by Downey that he affirmatively told Harris not to engage in instruction of the cadets. Downey's bare assertion in his motion for summary judgment does not constitute summary judgment proof, and cannot support summary judgment. *See Madeksho v. Abraham, Watkins, Nichols & Friend,* 57 S.W.3d 448, 455 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (noting conclusions in motion for summary judgment or response are not summary judgment evidence).

Moreover, summary judgment evidence exists in the record from which a reasonable inference could be made that Harris's duties as evaluator entailed more than mere evaluation. Adams testified that the cadets had been told that there would be a police officer at each training exercise "overseeing the scenario." Here, the police officer "overseeing the scenario" was Harris. A reasonable inference can be made that the word "overseeing" connotes more than merely evaluating the performance of the cadets.

In addition, Harris's deposition testimony, which was attached to Downey's motion for summary judgment, supports the inference that Harris's role as an evaluator included instruction of the cadets. In his deposition, Harris explained that Adams's failure to secure his weapon during the mock arrest was a mistake that could have cost Adams and his partner their lives. Harris testified that it was his "job" to (1) "point those things out," i.e., safety concerns, to the cadets, (2) prevent the same mistakes from being made in the future by the cadets, and (3) teach the cadets "the right thing to do." It was for those rea-

**3.** In support of his response to Downey's motion for summary judgment, Adams offered the sworn statements of two other cadets, who also stated that Downey had instructed them that they could discharge their weapons. In the trial court, Downey objected to the sworn statements of the two cadets on various evidentiary grounds. The trial court sustained Downey's objections. Adams does not challenge the trial court's evidentiary ruling on appeal; thus, we cannot, and do not, consider the sworn statements in our review.

sons that Harris showed the cadets how easily a suspect could take Adams's handgun. The capacity in which Harris acted, either as an instructor or mere evaluator, relates to his qualifications and whether Downey acted in good faith in assigning him in that capacity based on those qualifications.

To establish that he acted in good faith, with regard to planning and administering the close training exercises, Downey offered the expert affidavits of Mike Jez, a law enforcement officer who served as a chief of police in Alvin and Denton, Texas, and Maurice Cook, former chief of the Texas Rangers. Based on their extensive experience training police officers, both Jez and Cook concluded that Downey acted reasonably and appropriately when Downey decided that blanks should be used in the cadets' handguns and failed to require that the cadets wear protective eyewear. However, Jez's and Cook's affidavits neglected to address the facts in the light most favorable to Adams. To the contrary, the affidavits reveal that the two experts relied on Downey's controverted version of the facts as the basis for their conclusions. In forming their expert opinions, Jez and Cook each presumed that the cadets were instructed by Downey to not draw or fire their weapons.

Jez and Cook also concluded that Downey acted reasonably in his selection of Harris as an evaluator. On this point, Jez relied on Downey's unsupported assertion that Downey had told Harris not to instruct the cadets. Specifically, Jez opined that it was not unreasonable for Downey to select Harris as an evaluator "in light of Mr. Downey's instructions to Mr. Harris that he was not to engage in any actual instruction of the cadets."

In his affidavit, Cook concluded that it was reasonable for Harris to serve as an evaluator. However, Cook failed to articulate whether or not he premised his opinion on the belief that Harris could instruct the cadets as part of his duties as evaluator. Thus, Cook's affidavit does not demonstrate that he viewed the facts in the light most favorable to Adams when he rendered his opinion on this point.

In sum, neither Jez nor Cook rendered an expert opinion based on Adams's version of the facts; that is, Downey's experts do not address the facts in the light most favorable to Adams. We leave to the fact finder the determination of whether Downey's or Adams's version of the facts is the correct one. In that respect, our job is easier than that of the fact finder because we must take Adams's assertions on material facts as true and indulge all inferences from that evidence in his favor. *Grinnell*, 951 S.W.2d at 425.

■ This Court, and other Texas courts, have held that a movant on summary judgment fails to conclusively establish good faith when the material facts relied on to support good faith are in dispute. *See Roberts v. Foose*, 7 S.W.3d 311, 315 (Tex. App.-Houston [1st Dist.] 1999, no pet.) (concluding officer could not establish good faith when factual dispute existed on whether plaintiff resisted arrest); *see also Kistner v. Pfannstiel*, 107 S.W.3d 7, 11–12 (Tex.App.-San Antonio 2002, no pet.) (holding summary judgment improper on good faith ground when contradictory proof introduced as to whether officer was justified in arresting plaintiff); *Hayes v. Patrick*, 45 S.W.3d 110, 118 (Tex.App.-Fort Worth 2000, pet. denied) (concluding game warden could not prove good faith when factual dispute existed as to facts leading up to investigatory stop of water craft); *City of Dallas v. Aguirre*, 977 S.W.2d 862, 864 (Tex.App.-Dallas 1998, no pet.) (holding officer could not establish good faith when factual dispute existed on whether plaintiff was fleeing police). Similarly, at

least two of our sister courts have held that an official fails to conclusively establish good faith when the official's motion for summary judgment relies on expert affidavits that do not address the facts in the light most favorable to nonmovant plaintiff. *See Kistner*, 107 S.W.3d at 12–13 (concluding expert affidavits not dispositive of officer's good faith because experts did not base opinions on facts addressed in light most favorable to plaintiff); *City of Houston v. Davis*, 57 S.W.3d 4, 7 (Tex. App.-Houston [14th Dist.] 2001, no pet.) (noting affidavits of other officer and experts regarding good faith only addressed offending officer's version of facts and thus were not in light most favorable to plaintiff); *Bridges v. Robinson*, 20 S.W.3d 104, 112–13 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding that officers' expert affidavits that addressed their own version of facts and ignored contradictory and other damaging proof failed to establish good faith), *overruled, in part, on other grounds by Telthorster*, 92 S.W.3d at 464. We agree with the reasoning of these opinions.

Because of the existence of contradictory proof on the material facts and Downey's failure to address the facts in the light most favorable to Adams, we hold that Downey failed to meet his summary judgment burden to conclusively establish his good faith.[4] Because we hold that Downey failed to conclusively prove he acted in good faith in planning and administering the close training exercises, we also hold that Downey failed to prove the defense of official immunity as a matter of law.

We sustain Adams's sole issue.

## Conclusion

For the reasons stated in this opinion, we reverse the judgment of the trial court and remand the cause for further proceedings.

---

4. In his motion for summary judgment, Downey also argued that Adams "admitted" in his deposition that Downey had acted in good faith. Downey relies on excerpts from Adams's deposition in which Adams testified that, at the time the training exercises began, (1) Adams believed that Downey had taken sufficient steps to secure the cadets' safety during the training exercises and (2) Adams had no safety concerns. Downey also pointed out that, when asked if the accident may have been unforeseeable to Downey, Adams responded, "anything's possible." Though Adams's testimony may (or may not) ultimately be probative of Downey's liability, or lack thereof, the testimony does not rise to the level of an "admission" by Adams that Downey acted in good faith. Moreover, the generalized testimony of Adams, a former police cadet, with no other law enforcement training, was not sufficient to show that a reasonably prudent official might have believed that Downey acted appropriately in planning and administering the close training exercises. *Cf. Gidvani v. Aldrich*, 99 S.W.3d 760, 764 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (stating official's sworn statement and expert affidavits may be offered to establish official immunity in summary judgment cases).