Opinion issued April 3, 2014



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00509-CV

———————————

**JULIAN CAO D/B/A JAYCEE IMPORTS, Appellant**

**V.**

**GLOBAL MOTORCARS OF HOUSTON, LLC AND JOHN LEONTARITIS, Appellees**

---

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 972148**

---

## MEMORANDUM OPINION

Julian Cao d/b/a Jaycee Imports sued Global Motorcars of Houston, LLC and its sole owner, John Leontaritis, for breach of implied contract and conversion of a check. In addition to actual damages, Cao sought attorney's fees on his contract claim and exemplary damages on his conversion claim. Before trial, the

court granted a take-nothing partial summary judgment with respect to the contract claim and the request for attorney's fees. Finding no evidence to support the imposition of exemplary damages, the trial court granted a motion for directed verdict as to exemplary damages. A jury found in favor of Cao on his conversion claim and found $39,052 in damages, which was the amount of the check that Cao alleged was converted. After trial, the court granted a take-nothing judgment n.o.v., ruling that Leontaritis was not liable for conversion as a matter of law and that Cao lacked standing to pursue the claim.

Cao appealed. He raises five issues, contending that the trial court erred by: (1) granting the defendants' motion for j.n.o.v. on the standing ground; (2) granting partial summary judgment as to the breach of implied contract claim; (3) granting partial summary judgment as to attorney's fees; (4) refusing to submit a jury question on exemplary damages; and (5) granting the motion for j.n.o.v. as to the conversion claim against Leontaritis.

Finding no error, we affirm.

## Background

Thinh Tieu was an automobile dealer who owned a business called Allstate Motorcars. For approximately 20 years, he did business with appellant Julian Cao, who ran a small automobile dealership called Jaycee Imports to supplement the salary he earned as an engineer. Appellee John Leontaritis is also in the car sales

business, and he is the sole owner of Global Motorcars of Houston, which he founded in 2004.

Leontaritis met Tieu as he was entering the automobile business, and Tieu became a mentor to him. Leontaritis became successful, and he loaned money to Tieu on many occasions. But after Tieu gave him rubber checks, Leontaritis would no longer accept a check directly from him for repayment.

In 2010, an Allstate Motorcars employee negotiated the sale of a 2007 Mercedes-Benz S550. For reasons not completely explained by the record, the salesman prepared a purchase order showing that the sale was between Jaycee Imports, as seller, and Hien V. Ha, as purchaser. However, at the time neither Jaycee Imports nor Cao owned the specified car. Cao had never met or spoken with Ha.

Cao testified that this was not an unusual transaction; he understood that Tieu wanted to run the sale through his dealership in exchange for a $500 commission. To that end, Tieu gave Cao a check for $43,255 from Chartway Credit Union, which ostensibly had provided the financing to Ha.

According to Cao, Tieu told him to "deduct the amount of tax, title and license, which [amounted] to about $4,200" and to deduct $500 for his fee. Cao testified that Tieu told him to write a check to Global Motorcars, which Cao understood to have been the dealership which held the title to the car. Cao gave

3

Tieu a check to Global Motorcars for $39,052. On the memo line, Cao wrote "07S550" and the vehicle identification number of the car described in the purchase order. He did not give Tieu any instructions pertaining to the check to Global Motorcars except to tell him to get the title. He did not tell Tieu to hold the check until he got the title or to require Global Motorcars to segregate the funds into a separate account. At the time he wrote the check, Cao had no contact with Global Motorcars or Leontaritis about the transaction. At trial, it was undisputed that Global Motorcars had not offered to sell the specific car to anyone. Relying on Tieu's representations, Cao did no research and did not determine who owned the car he was purporting to sell.

Neither Global Motorcars nor Leontaritis ever owned or possessed the 2007 Mercedes-Benz S550 referenced on Cao's check. Rather, Tieu said he had purchased the car from a dealership in Dallas, and he had physical possession of it at the time Cao wrote the check to Global Motorcars.

Tieu testified by deposition that before selling the car to Ha, he sold the same car to another purchaser. He said he gave the other purchaser the title before he received a check for the car. The other purchaser obtained financing from Premier Financial, spent the money elsewhere, and never returned the title to Tieu or repaid Premier Financial. Tieu said he forgot that he had given the other purchaser the title and decided to sell the car again.

4

Tieu characterized the transaction with Cao as a simple exchange of funds: Cao received a check for $43,252 and gave Tieu a check for $39,052. Tieu testified that Leontaritis had agreed to cash the check from Jaycee Imports. He also testified that Cao did not give him any instructions about segregating the check or the proceeds thereof. Contrary to Cao's contentions, Tieu said that he did not tell Cao that Global Motorcars had the title. According to Tieu, Cao could not have expected Global Motorcars to give him a title to the car because he had not contacted Global Motorcars.

Tieu took the check to Leontaritis, who testified that he accepted the check as partial repayment of a loan he had made to Tieu. (Tieu testified that Leontaritis gave him cash in exchange for the check, and he used the money to purchase a Bentley.) Leontaritis gave the check to his comptroller, who deposited it into the company account in late March 2010. Leontaritis did not put any of the money in his personal account. He did not ask about the notes on the memo line of the check, nor did he otherwise contact Cao about it. Tieu did not give Leontaritis any instructions regarding the check. Leontaritis testified that Tieu did not tell him that he had to provide a title in exchange for the check, and he said, "Actually, if I thought that, I would not have taken it." With respect to his willingness to accept the Jaycee Imports check, Leontaritis said that Tieu's checks from Allstate had

5

been bouncing, and he said, "As long as it wasn't from Allstate, I didn't care. It was to pay me the money that he owed me."

When Cao did not receive the title to the car, he asked Tieu why there was a delay. Cao testified that Tieu told him that Global Motorcars could not find the title and needed to get a duplicate. Cao said, "I just believed that the title was lost and I was waiting to get the duplicate title to be brought back to me." He also contacted the credit union and alerted it that there was an issue with the title to the car. But he did not contact Global Motorcars.

In May, Cao saw the car on Tieu's lot, and Tieu told him that he got the car back because there was a problem with the title. A few days later, the car was repossessed by Premier Financing, the lien holder on the car. Tieu testified that he told Cao to call Premier Financing to obtain the title to the car.

After the car was repossessed, Cao became concerned that he owed Chartway Credit Union a refund of the original check. Although he acknowledged that he was not an employee, officer, or director of Chartway, he explained: "My concern was to try to get back the money so I can return that money to [the] credit union." He also said:

> My whole intention to file this lawsuit is to make sure that the money returned to the right owner; and in this case the right owner is the credit union who paid $43,000 for a car that does not have title. And my whole intention is [to] try to get the money back so I can return that money to [the] credit union because I know now that the title cannot be produced.

He stated that he owed Chartway approximately $43,000, and he planned to return the money. He testified that the $39,052 check given to Jaycee Imports represented Chartway's money, saying: "I never said it was my money." However, he did not repay any of Chartway's money, including the $4,200 that he had retained for tax, title, and license.

In August 2010, Cao sent a demand letter to Global Motorcars for $39,052, alleging that the check was transmitted to be exchanged for the title to the referenced vehicle and that Global Motorcars deposited the check but failed to provide the title to the car. This was Cao's first personal contact with Global Motorcars about the transaction. Global Motorcars responded that it had never owned the referenced vehicle, and it demanded that Cao identify the salesperson with whom he spoke and the date of the negotiation of the alleged purchase. In addition, the letter acknowledged receipt and deposit of the check, but it stated that Tieu had represented that the check was for the purpose of partially repaying a personal loan. The letter also stated, "Importantly, neither your client nor Mr. Tieu informed Global that the check [was] intended to be payment for a vehicle that was not in Global's possession. Thus, it appears that your client should seek any recovery, if any is allowed, from Mr. Tieu."

Cao sued Global Motorcars and Leontaritis for breach of an implied contract and conversion. He also sought recovery of attorney's fees. Global Motorcars and

7

Leontaritis moved for partial summary judgment arguing that Cao could not establish breach of an implied contract and that he had conceded that his claim for attorney's fees was meritless in response to special exceptions. As summary-judgment evidence, the defendants attached the second amended petition, response to special exceptions, and an affidavit from Leontaritis.

In response Cao argued that the $39,052 check with the VIN number noted on the memo line was an offer to purchase that vehicle and that the offer was accepted when Global Motorcars deposited the check. As for attorney's fees, Cao argued that attorney's fees are recoverable for conversion when founded upon a written contract.

The trial court granted the motion for partial summary judgment, dismissing with prejudice the claims for breach of an implied contract and recovery of attorney's fees. The case went to trial on Cao's theory of conversion. At the time of trial, Chartway had not sued Cao or Jaycee Imports in connection with this transaction. There is no evidence in the record that Chartway had even made a demand on Cao or Jaycee Imports. Likewise, there is no indication that Ha had made any demand or filed any lawsuit against Cao or Jaycee Motors. Neither Chartway nor Ha were parties to this case. Furthermore, Cao conceded he had not lost any money on account of this transaction.

The jury found: (1) the check was personal property as defined by the charge, (2) both Global Motorcars and Leontaritis were liable for conversion of the check, (3) neither Global Motorcars nor Leontaritis was a holder in due course, and (4) the parties' responsibility for the conversion was assigned as 10% to Tieu, 40% to Gobal Motorcars, and 60% to Leontaritis.

The defendants filed a motion for judgment notwithstanding the verdict, challenging Cao's standing and arguing that there was no evidence to support the conversion claim. The court granted the motion for j.n.o.v. on both grounds. Cao filed a motion for new trial challenging the j.n.o.v., the trial court denied the motion. Cao appealed.

## Analysis

### I. Implied contract

In his second issue, Cao argues that the trial court erred in granting summary judgment on his breach of implied contract claim.

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A

defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

"The elements of a contract, express or implied, are identical." *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). These elements are an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutually binding. *Id.* While an express contract arises when contractual terms are stated by the parties, an implied-in-fact contract arises from the acts and conduct of the parties. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). When a party sues on an implied contract, the element of mutual assent is a question of fact to be determined by the fact finder. *Id.* at 609–10. While mutual assent can be shown from the conduct of the parties, the conduct must be intentional and the actor must know or have reason to know that the other party will infer his assent from his conduct. *Id.* at 609.

The defendants filed a traditional motion for summary judgment, arguing that the factual allegations in Cao's pleading negated elements of his breach of implied contract cause of action. Specifically, the defendants relied on the following allegations:

10

JAYCEE is a car dealer in Houston, Texas. Tim Tieu ("TIEU") of Allstate Motorcars, also a car dealer in Houston, requested that JAYCEE assist him in facilitating a sales transaction of a 2007 Mercedes Model S550 . . . ("the vehicle") that he had sold . . . .

. . . .

JAYCEE specifically wrote the check for the vehicle because he was told GLOBAL had possession of the title and subsequently he discovered that GLOBAL never had title. GLOBAL has admitted that it accepted the check as payment for a personal debt between TIEU and GLOBAL and/or LEONTARITIS.

The defendants argued that Cao could not prove offer and acceptance, which are elements of an implied contract, because his petition alleged that the agreement was between Jaycee Imports and Tieu, and thus did not involve either defendant. They also argue that the petition negates the "mutual intent to contract" element of an implied contract because it alleges that Global Motorcars accepted the check as payment for a personal debt. That is, although there is evidence that Global Motorcars accepted the check, such action does not satisfy the element of mutual assent to contract.

The defendants attached Cao's second amended petition, his response to the defendants' special exceptions and motion to dismiss, and an affidavit from Leontaritis. In the affidavit, Leontaritis averred that he never owned the 2007 Mercedes-Benz S550 and that the check he received from Tieu was solely for repayment of a personal debt. He also averred, "I have not routinely done business with Jaycee Imports in the past and did not intend to do business with Mr. Cao or

Jaycee Imports when accepting the check from Tim Tieu." Because Leontaritis's affidavit conclusively negated the element of assent, the burden shifted to Cao to produce some evidence that Leontaritis or Global Motorcars assented to the alleged implied contract.

In response to the motion for summary judgment, Cao provided an affidavit, in which he averred that he made an offer to purchase the car by tendering a check to Leontaritis and Global Motorcars with the vehicle notation on the front:

> I made an offer on March 22, 2010 to Defendants for the purchase of a 2007 Mercedes S550 . . . ("the vehicle") when my check was tendered for payment of the same. The check, with the vehicle notation on the front, is the way I have conducted business for twenty (20) years as attached as Exhibit A. I expected a title in return for my check.

He further averred that Leontaritis and Global Motorcars deposited the check on March 24, 2010 without delivering title. However, nowhere in his affidavit did Cao aver that it was a customary practice in the automobile business for a purchaser to offer to buy a vehicle solely by tendering a check bearing a vehicle identification number and without any other communication. Nor did he aver that it was equally customary in the automobile business for the acceptance of such a check to constitute acceptance of an offer to purchase a vehicle identified by such a notation.

Nevertheless, in his response to the motion for partial summary judgment, Cao argued that "Defendants accepted their offer by their deposit of the check." He

12

also argued that the practice of noting the vehicle model and identification number on the front of the check was "the customary business practice of Plaintiff and industry standard." It is well-settled that a pleading, including a response to a motion for summary judgment, is not evidence that a court may consider in ruling on a motion for summary judgment. Thus Cao's arguments are not summary-judgment evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660–61 (Tex. 1995); *Adams v. Downey*, 124 S.W.3d 769, 773 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 455 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

The defendants conclusively negated the element of mutual assent to contract, and Cao's summary-judgment evidence failed to raise a fact question as to whether Leontaritis and Cao intended to enter into a contract for the sale of the subject vehicle. Because Cao failed to raise a genuine issue of material fact as to the negated issue, we conclude that the defendants were entitled to summary judgment, and we hold that the trial court correctly granted summary judgment and dismissed the breach of implied contract claim. *See* TEX. R. CIV. P. 166a(c); *Sci. Spectrum, Inc.*, 941 S.W.2d at 911. We overrule Cao's second issue.

## II. Attorney's fees

The defendants' motion for summary judgment also argued that Cao had no basis in law for his claim of entitlement to attorney's fees. The defendants filed a special exception to the petition, and Cao responded by amending his petition to omit references to Civil Practice and Remedies Code section 38.001. However, Cao continued to assert a claim for attorney's fees under the causes of action as pleaded.

Texas follows the American Rule, which provides that there can be no recovery of attorney's fees unless authorized by contract or statute. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). As a general rule, attorney's fees are not recoverable in a conversion case, however an exception exists and such fees may be recoverable when a conversion case is founded on a contract. *F.D.I.C. v. Golden Imports, Inc.*, 859 S.W.2d 635, 646–47 (Tex. App.—Houston [1st Dist.] 1993, no writ). In addition, section 38.001 of the Texas Civil Practice and Remedies Code provides for the recovery of "reasonable attorney's fees . . . if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2008). Cao's live pleading omitted any reference to section 38.001, and he does not rely on this statute on appeal.

Cao argues that attorney's fees are recoverable because his conversion claim is founded upon a contract. However, there is neither allegation nor proof of a written contract in this case, and we have held that the trial court correctly granted the motion for summary judgment because the defendants negated the existence of an implied-in-fact contract. Accordingly, we conclude that there was no legal basis for an award of attorney's fees in this case, and we hold that the trial court correctly granted the motion for summary judgment by dismissing Cao's claim for attorney's fees.

## III. Standing

In his first issue, Cao argues that the trial court erred by granting judgment notwithstanding the verdict on the ground that he lacked standing to pursue a cause of action for conversion.

We review a trial court's judgment notwithstanding the verdict under a no-evidence standard, and we will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). To merit the trial court's j.n.o.v., the defendants were required to demonstrate that the evidence conclusively showed that Cao lacked standing. In a case such as this one, in which the question of standing was raised after trial, we construe the petition in the plaintiff's favor, and we may review the entire record to

determine if any evidence supports standing. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Standing requires that the parties have a real controversy which can actually be determined by the relief sought. *Id.* If a party lacks standing, a trial court lacks subject-matter jurisdiction to hear the case. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). A person has standing to appeal when he is personally aggrieved by the alleged wrong. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). To demonstrate standing, a "plaintiff must affirmatively show, through pleadings and other evidence pertinent to the jurisdictional inquiry, a distinct interest in the asserted conflict, such that the defendant's actions have caused the plaintiff some particular injury." *Alpert v. Riley*, 274 S.W.3d 277, 291 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984)). In addition, the complained-of injury "must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (footnotes omitted).

Closely related to standing, and also implicating a court's subject matter jurisdiction, is the concept of ripeness. *Ramon v. Teacher Retirement Sys. of Tex.*, No. 01-09-00684-CV, 2010 WL 1241293, at *4 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (mem. op.) (citing *Patterson v. Planned Parenthood of Houston*,

16

971 S.W.2d 439, 442 (Tex. 1998). A claim is ripe when the complained-of injury has occurred or is likely to occur. *Id.* "If the injury is only likely to occur, the plaintiff must demonstrate that the injury is imminent, direct, and immediate, and not merely remote, conjectural, or hypothetical." *Id.* (citing *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000)). "A case is not ripe when determining whether the plaintiff has a concrete injury depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Gibson*, 22 S.W.3d at 852.

On appeal, Global Motorcars and Leontaritis argue that there was no evidence that Cao suffered a distinct injury because of any action taken by them. They argue that Cao was suing in an attempt to recover Chartway's money, and they point out that Chartway had not sued Cao. In his petition, Cao alleged that Global Motorcars and Leontaritis converted the check by depositing it in a Global Motorcars account and by refusing to return it when demanded. He alleged that the money was accepted as repayment of a debt Tieu owed to Leontaritis and Global Motorcars.

Cao argues that he has standing to pursue these claims because he delivered a check to Global Motorcars and received nothing in return. He argues that the sale of the car is void because he cannot transfer title to Chartway. He further argues that he has suffered an injury, that money damages would make him whole and enable him to refund Chartway's money, and that the two-year difference in the

17

statutes of limitation for conversion (2 years) and breach of contract (4 years) weighs in favor of finding that he has standing.

At trial Cao conceded that, aside from his legal fees, he had lost no money due to this transaction, and he had $4,200 more in his bank account because he had retained the money set aside for tax, title, license, and commission. As to the $39,000 that Tieu delivered to Global Motorcars, Cao conceded it was Chartway's money, not his own, saying, "I never said it was my money." Cao testified that he was suing on behalf of Chartway, although he had no legal right to do so.

Cao testified that he had no contact or communication with Leontaritis or Global Motorcars before writing the check or entrusting it to Tieu for delivery. He testified that the only person who ever offered to sell him the vehicle was Tieu, upon whom he relied when making the check payable to Global Motorcars. Cao testified that Tieu betrayed his trust and defrauded him by failing to bring him title to the car. Although Cao argues that he had a transaction with Global Motorcars that went awry, the record shows that his transaction and agreement were with Tieu.

Cao also testified that Chartway had not sued him regarding the car or the check. He described a conversation he had with a Chartway loan officer who instructed him to "keep working on the title," and to inform her when he had

obtained it. However, the court sustained an objection to this testimony and instructed the jury to disregard it.

Neither Cao's pleadings nor the evidence adduced at trial show that he suffered a distinct injury as a result of the defendants' actions. He lost no money and in fact had gained $4,200 as a result of the transaction. He conceded that the money did not belong to him; rather, it belonged to Chartway. But Cao has no standing to sue for money that belongs to another party. *See Shipley*, 331 S.W.3d at 30. In addition, to the extent that it was Tieu, not the defendants, who had defrauded Cao, no real controversy exists between Cao and the defendants that can actually be determined by the relief sought. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

Cao also argued that, based on the two-year difference between the statutes of limitation for conversion and breach of contract, he anticipated that Chartway might sue him to recover on the check. That hypothetical circumstance, were it to occur, would not change our analysis that Cao lacks standing to assert a conversion claim on behalf of Chartway. Moreover, there is no evidence in the record demonstrating that Cao's professed concerns are likely to be realized. Cao testified that Chartway had not sued him. And aside from his stricken testimony that the loan officer instructed him to continue trying to obtain the title to the car, the record is bereft of evidence as to whether Chartway will take action against Cao to

recover the money that was initially loaned to Ha. The record in this case does not show that any action by Chartway has occurred or is likely to occur; there is no evidence that such an injury was "imminent, direct, and immediate, and not merely remote, conjectural, or hypothetical." *See Ramon*, 2010 WL 1241293, at *4.

Because Cao has not alleged or demonstrated a concrete, particularized injury caused by the defendants' conduct, we hold that Cao lacks standing to sue them for conversion. Accordingly, the trial court properly granted the motion for j.n.o.v. We overrule Cao's first issue, and in light of this disposition, we need not address Cao's fourth and fifth issues.

## Conclusion

We affirm the trial court's judgment.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

Justice Sharp, concurring without opinion.