Appellees= Motion for Rehearing En Banc Granted; Opinion of March 27,
2007 Withdrawn; Affirmed and Majority, Concurring, and Dissenting Opinions on
En Banc Rehearing filed July 15, 2008








 

Appellees= Motion for Rehearing En Banc Granted; Opinion of
March 27, 2007 Withdrawn; Affirmed and Majority, Concurring, and Dissenting
Opinions on En Banc Rehearing filed July 15, 2008.               

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00407-CV

____________

 

CHRISTOPHER GREEN, Appellant

 

V.

 

DWAINIA ALFORD, Individually, and
as Next Friend of AARON ALFORD, and RONALD ALFORD, Appellees

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 2002-53991

 



 

D I S S E N T I N
G    O P I N I O N    O N   E N   B A N C   R E H E A R I N G

The majority opinion concludes that (1) Green had the
burden of establishing his affirmative defense of official immunity, (2) the
facts necessary to establish official immunity were disputed, and (3) the trier
of fact resolved those factual disputes in favor of the Alfords.  Thus, Green
failed to establish his defense of official immunity, and the judgment is
affirmed.  The resolution is simple and compelling, but it effectively
abolishes the defense of official immunity.








There is no question the Alfords submitted, and the trial
court found, sufficient facts to establish that Green acted negligently in
proceeding through the intersection as he did.  However, the purpose of the
doctrine of official immunity is to protect public officers from civil
liability for conduct that would otherwise be actionable.  See City
of Lancaster v. Chambers, 883 S.W.2d 650, 653B54 (Tex. 1994). 
In other words, the underlying purpose of official immunity is to free
government officials to exercise their duties without fear of damage suits that
would consume their time and energy and the threat of which might appreciably
inhibit the fearless, vigorous, and effective administration of policies of
government.  Borrego v. City of El Paso, 964 S.W.2d 954, 958 (Tex.
App.CEl Paso 1998, pet.
denied).  Thus, evidence of negligent acts does not establish a lack of good
faith.[1] 
AIf a government
employee acts within the scope of his employment in the performance of a
discretionary duty and acts in good faith, he is entitled to official immunity
even though his acts are negligent, or even illegal.@  Johnson v.
Campbell, 142 S.W.3d 592, 594 (Tex. App.CTexarkana 2004, pet. denied).[2]








To establish his good faith, Green testified that he
weighed the need to respond quickly to the alarm against the risk of injury
from entering the intersection on a red light.  To minimize the risk, Green
said (1) he activated his emergency lights and siren before leaving the
station; (2) he slowed down as he approached the intersection; (3) before
entering the intersection, he activated his air horn and looked in the
direction of approaching traffic; (4) he saw that no vehicles were moving; (5)
he believed his view of the far right lane of Fairmont Parkway was not
obstructed and, if it had been obstructed, he would have stopped; and (6) he
drove slowly enough that he could have stopped in time to avoid an accident if
he had seen the Alfords= vehicle.  Thus, Green presented
sufficient evidence to establish the affirmative defense of official immunity. 
The majority holds the Alfords offered evidence rebutting Green=s assertions and,
thus, created a fact issue as to whether he acted in good faith.  Having
created a fact issue, the majority finds the issue was resolved against Green by
the trier of fact.  Indeed, the trial judge, acting as the trier of fact in the
court below, apparently disbelieved much of Green=s testimony
because the trial court found that Green (1) did not assess the risk of entering
the intersection as he did against the need to respond quickly to the fire
alarm, (2) did not activate his siren, (3) did not use his air horn, (4) could
not and did not see the far right lane of Fairmont Parkway, (5) and was driving
too fast to stop when he entered the intersection.

In addition, the trial court also concluded that Green did
not act in good faith because evidence was admitted showing that (1) Green was
suffering from a progressive eye disease that principally blurred the vision in
his right eye; (2) in 1997 or 1998, Green failed a vision test administered by
the Texas Department of Public Safety; (3) Green was required to wear
corrective lenses while driving; and (4) Green was not wearing corrective
lenses at the time of the collision.  The court further found that Green (as he
himself admitted) was aware that the fire alarm was an automatic alarm and that
most automatic alarms are later discovered to be false alarms.[3]








While these factual findings may be damning to Green, they
do not resolve the critical issue.  After a defendant has offered evidence
showing he acted in good faith, he is entitled to official immunity as a matter
of law unless the plaintiff offers some evidence Athat no reasonable
person@ in the defendant=s Aposition could
have thought that the facts justified@ the defendant=s conduct.[4] 
See University of Houston v. Clark, 38 S.W.3d 578, 581 (Tex. 2000).  To
make this critical showing, the Alfords relied principally upon the testimony
of their expert witness, Robert Stage.  Stage testified that (1) Green caused
the collision; (2) his actions were reckless; (3) he secured the first two
lanes of westbound traffic but erred in failing to secure the third lane of
traffic; (4) he should have come to a complete stop until he secured the third
lane of traffic; and (5) he should have known that his conduct posed a high
degree of risk.  Stage also testified that, in his opinion, the risk versus
need balancing test was not met when Green entered the third lane of traffic
without first Asecuring@ it.

Stage=s opinion that Green caused the accident
is largely undisputed.  Moreover, who Acaused@ the accident is
not the relevant issue.  The fact that a governmental employee was negligent
will not defeat good faith.  Telthorster v. Tennell, 92 S.W.3d 457, 465
(Tex. 2002).[5]
The fact that Green=s conduct may have been Areckless@ is also
unavailing.  Conduct that is clearly reckless may be reasonable in a time of
crisis.  For example, in White v. Tackett, 173 S.W.3d 149, 151 (Tex.
App.CFort Worth 2005),
the plaintiff alleged that a Texas Department of Public Safety trooper was Areckless@ in initiating and
continuing a high speed pursuit that ultimately led to her injuries.  The court
agreed that the trooper=s conduct presented Aa clear risk of
harm to the public in continuing, rather than terminating, the pursuit,@ but held the risk
was outweighed by the need to apprehend the suspect.  Id. at 155.  The
defense of official immunity exists precisely because government employees are
sometimes called upon to take measured risks in the performance of their duties
that may sometimes result in injury or damage to others.








Further, Stage based his opinion regarding Green=s recklessness on
the fact that he had an accident.  In other words, Stage testified that because
Green collided with a vehicle, his conduct, ipso facto, involved a high
degree of risk.  Stage testified, AIf [Green] looked
and thought it was clear and there was a vehicle there, then he didn=t take the time to
look and see clearly.@  However, I do not agree with Stage=s assumption that
Green=s inaccurate
perception necessarily rendered it unreasonable for him to have believed that
all traffic was stopped based upon his knowledge at the time.  AIf this were so,
any admission that a risk existed would defeat the element of good faith, and
any collision would be adequate evidence that a reasonable employee would have
assessed the risk differently, thereby vitiating the doctrine of official
immunity in most or all cases.  Official immunity is designed to encourage
emergency personnel to take reasonably calculated risks when they have properly
considered need and risk, not to punish them for having done so.@  City of San
Angelo Fire Dep=t v. Hudson, 179 S.W.3d 695,
706 (Tex. App.CAustin 2005, no pet.).  Most importantly, Stage did
not testify that no reasonable firefighter under the same or similar
circumstances would have entered the intersection as Green did.








The Alfords also relied on the testimony of J. D. Gardner,
the Chief of the Pasadena Volunteer Fire Department.  Gardner testified that no
reasonable firefighter would drive a fire truck without corrective lenses if
such lenses were required by the terms of his driver=s license.  While
the testimony was conflicting, the trial court found that Green was not wearing
corrective lenses at the time of the collision although they were required by
his license.  If there had been an issue as to whether Green=s failure to wear
corrective lenses was a contributing cause of the accident, Gardner=s testimony in
this regard would have been sufficient to rebut Green=s defense of
official immunity thereby creating a fact issue for the trier of fact. 
However, the trial court found Green failed to see the Alfords= vehicle, not
because he failed to wear corrective lenses, but because intervening traffic
was blocking his view of the far right lane.  Thus, Green=s failure to wear
corrective lenses is immaterial because it was not a contributing cause of the
accident.  

Gardner was asked
several times whether any reasonable firefighter would have entered the
intersection at 23 miles per hour when he could not see the third lane of
traffic.  In response, Gardner repeatedly testified that he believed in such a
scenario the firefighter should proceed with Adue regard.@  Gardner was then
asked:

Q.  Okay.  But I=m talking about all these assumptions.  If he was going 23
miles-per-hour, if he couldn=t see the last lane of traffic, if he couldn=t stop in time; that wouldn=t be due regard, would it?

A.  Oh, no, sir.

Thereafter Gardner was asked:

Q.  All right.  We were talking about due regard.  I
wanted to come back to this.  This was your testimony, right, that a reasonable
fire truck operator must use due regard, right?

A.  Uh-huh.

Q.  While operating a fire truck, right?  Is that Ayes@?

No. 1?

A.  Yes, sir.

Q.  Is this your testimony that a reasonable fire
truck operator must use due regard?

A.  Yes, sir.

Q.  Now, I want you to consider these assumptions:

Number 2:  A fire truck has a red light on Jana,
okay?

A.  Uh-huh.

Q.  Is that okay?

A.  I said yes, sir.

Q.  Westbound Fairmont Parkway has three lanes at 11
feet wide per lane, okay?

A.  Yes, sir.








Q.  Westbound Fairmont Parkway is a busy
intersection, okay?

A.  Yes, sir.

Q.  The time of the collision was during Friday rush
hour, okay?

A.  Okay.

Q.  The vision of the northern most lane of
westbound Fairmont is obscured and the driver of the fire truck never sees the
Alford truck, okay?

A.  Yes, sir.

Q.  The fire truck is traveling at a speed in which
it cannot stop before it enters the northern most or third lane of westbound
Fairmont Parkway?

A.  Yes, sir.

Q.  Okay.  Now, knowing all of these assumptions
and taking all of these assumptions, Mr. Green would not have been acting in
due regard; isn=t that right?

A.  I disagree with you.

Q.  Okay.  Well, which one of these assumptions C I mean, do you C are you disagreeing with the
assumptions?

A.  How fast was the Alford truck traveling?  I
mean, there is a lot of things that you are not putting in here.  The fire
truck operator fulfilled his requirement by visually checking the lane of
traffic and he was operating in that apparatus in due regard because it was his
assumption that he had acquired the right-of-way to that intersection when he
proceeded through it.

(Emphasis
added).








While Gardner=s testimony comes
close to creating a fact issue, the test is not whether a Areasonable@ firefighter would
have slowed to 2 miles per hour, stopped, or even stepped out of the truck to
physically inspect all lanes of traffic on foot.  In other words, the Atest of good faith
does not inquire into >what a reasonable person would have done,= but into >what a reasonable
[person] could have believed.=@  Ballantyne,
144 S.W.3d at 426 (quoting Telthorster, 92 S.W.3d at 465 quoting Wadewitz
v. Montgomery, 951 S.W.2d 464, 467 n.1 (Tex. 1997)).  Here, Gardner did not
testify that no reasonable firefighter could have believed the risk taken by
Green when he entered the intersection against a red light was justified under
the circumstances.

The Alfords contend Green is bound by the trial court=s findings of fact
and that such findings created a fact issue regarding Green=s good faith.  In
light of Stage=s and Gardner=s failure to
testify that no reasonable firefighter would have entered the intersection as
Green did under the same or similar circumstances, the question is whether a
plaintiff can rebut a prima facie showing of good faith so as to create a fact
issue without the benefit of expert testimony.








It is well established that if Ascientific,
technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education may
testify thereto in the form of an opinion or otherwise.@  Tex. R. Evid. 702 (emphasis added). 
Such expert testimony is required, however, when the alleged negligence
is of such a nature as not to be within the experience of laymen.  FFE
Transp. Servs., Inc. v. Fulgham, 154 S.W.3d 84, 90 (Tex. 2004).  When
asserting the affirmative defense of official immunity, the government employee
may meet his burden of showing good faith through his own testimony.[6] 
Of course, the defendant employee has the requisite experience, training, etc.
to testify in his own behalf precisely because he is a fireman, policeman, ambulance
driver, etc.  Here, the evidence shows that Pasadena Volunteer firefighters
usually have 12 weeks of training and all are certified firefighters.  Some
portion of that training relates to driving emergency vehicles.  One witness,
for example, described a course for driver certification that requires a
minimum of 16 hours of instruction, as well as, testing and driver
qualification exercises.

While driving is certainly in the sphere of experience for
the average laymen, few have any experience driving emergency vehicles. 
Moreover, to rebut a defendant=s showing of good
faith so as to create a fact issue, the plaintiff must first show that Ano reasonable
person in the defendant=s position could have thought
the facts were such that they justified defendant=s acts.@  Chambers,
883 S.W.2d at 657 (emphasis added).  Driving an emergency vehicle in
contravention of normal traffic laws, where a delayed response could prove
fatal to one or more persons, in crowded conditions is simply not an activity
within the common experience of laymen.  Thus, under the circumstances
presented here, the Alfords were required to proffer the testimony of an expert
witness.  Of course, the Alfords offered the testimony of several experts, but
none testified that no reasonable firefighter could have believed he was
justified in entering the intersection as Green did after weighing the risk of
an accident against the need to respond to the emergency alarm.

Without expert testimony that no reasonable firefighter
would have proceeded through the intersection as Green did, the Alfords did not
(1) offer any evidence to rebut Green=s prima facie
defense of official immunity and (2) no fact issue exists on this issue for the
trier 

 

 

 

 

 








of fact to resolve.  Accordingly, I respectfully dissent.

 

 

 

 

 

/s/      J. Harvey Hudson*

Senior Justice

 

 

 

Judgment rendered
and Majority, Concurring and Dissenting Opinions filed July 15,  2008. (Guzman,
J., majority and Frost, J., concurring.)

En Banc.** (En Banc court
consists of Chief Justice Hedges and Justices Yates, Anderson, Fowler, Frost,
Seymore Guzman, Brown, Boyce and Hudson.)









[1]  Official immunity is, under certain circumstances,
an absolute privilege.  It is founded on the theory that the good it
accomplishes in protecting the rights of the general public outweighs any wrong
or injury which may result to a particular individual.  Thus, by shielding
government officials against harassment and inevitable hazards of vindictive or
ill‑founded damage suits filed in response to actions officials take
while fulfilling their official responsibilities, the privilege protects the
public interest.  This is true even though the privilege may result in
individual citizens suffering some pecuniary loss due to the malicious acts of
government officials.  Cloud v. McKinney, 228 S.W.3d 326 (Tex. App.CAustin 2007, no pet.).





[2]  AThus qualified
immunity protects all but the plainly incompetent or those who knowingly violate
the law.@  Chambers, 883 S.W.2d at 656.





[3]  Here, the alarm was, in fact, a false alarm.





[4]  AOnce the
defendant presents proof that a reasonable [person] in the same or similar
circumstances would have taken the same action, the burden shifts to the
plaintiff to show that no reasonable [person] in the defendant=s position could have thought the facts were such they
justified the defendant=s act.@ Souder v.
Cannon, 235 S.W.3d 841, 853 (Tex. App.CFort
Worth 2007, no pet.). 





[5]  The purpose of common‑law official immunity is
to protect public officials from being forced to defend their decisions that
were reasonable when made, but upon which hindsight has cast a negative light. 
Id. at 463.





[6]  See Freeman v. Wirecut E.D.M., Inc.,
159 S.W.3d 721, 730 (Tex. App.CDallas 2005, no
pet.) (holding policer office may establish good faith through his own
testimony); Zuniga v. Navarro & Assocs, P.C., 158 S.W.3d 663, 672
(Tex. App.CCorpus Christi 2005, pet. denied) (holding good faith
may be established in summary judgment context by the defendant official=s own affidavit);  Gidvani v. Aldrich, 99
S.W.3d 760, 764 (Tex. App.CHouston [1st
Dist.] 2003, no pet.) (holding district attorney could establish good faith in
summary judgment context by his own affidavit); Hayes v. Patrick, 45
S.W.3d 110, 116 (Tex. App.CFort Worth
2000, pet. denied) (holding police officer may establish good faith in context
of summary judgment by his own affidavit); Beatty v. Charles, 936 S.W.2d
28, 31 (Tex. App.CSan Antonio 1996, no writ) (holding good faith may be
established by expert testimony or the defendant police officer=s testimony). 





* 
Senior Justice J. Harvey Hudson sitting by assignment





**
.En Banc